**Robert HOGUE, Plaintiff,**

v.

**FRUEHAUF CORPORATION, Defendant.**

No. 87–1143.

United States District Court, C.D. Illinois, Peoria Division.

Oct. 28, 1993.

R. Wayne Harvey, Peoria, IL, for plaintiff.

Lyndon C. Molzahn, Chicago, IL, R. Michael Henderson, Peoria, IL, for defendant.

*ORDER*

MIHM, Chief Judge.

Pending before this Court is Plaintiff Robert Hogue's Motion for Default Judgment pursuant to Rule 37, Fed.R.Civ.P., or in the Alternative, Sanctions or Equitable Relief (# 119). For the reasons set forth below, the Motion for Default Judgment on the issue of liability is granted.

This case was filed on May 7, 1987, and involves injuries allegedly caused by a sliding tandem problem occurring with tractor trailers manufactured by Defendant Fruehauf Corporation ("Fruehauf"). On December 9, 1987, Fruehauf responded to interrogatories seeking information on claims against Fruehauf or its subsidiaries, arising out of injuries allegedly caused by a product similar to the

---

product used by Plaintiff Hogue (a tandem trailer). In its answers, Fruehauf reported that it was in the process of compiling the requested information and that it would supplement its answer in accordance with Rule 26(e), Fed.R.Civ.P. These interrogatories were signed by Fruehauf's Assistant General Counsel at that time, Lawrence C. Bourbeau, Jr. Fruehauf also responded that it was compiling information and would later supplement its response to Hogue's interrogatories requesting information on testing programs or procedures and facts surrounding testing on Fruehauf products, including the identity of persons who processed data or results from such testing. Updated requests for discovery were made from time to time by the Plaintiffs between December of 1987 and July of 1992. From December 9, 1987 to July of 1992, Fruehauf did not inform Hogue of any accidents similar to the Hogue incident, and produced approximately four test reports.

In July 1992, Hogue's counsel discovered the existence of a National Highway Traffic Safety Administration ("NHTSA") letter dated May 30, 1985, referring to a sliding tandem problem with Fruehauf tractor trailers. As a result, on August 14, 1992, Hogue filed a Motion for Sanctions and for an Order to Reopen Discovery. On September 9, 1992, Fruehauf produced a file disclosing a NHTSA investigation from the 1980's respecting sliding tandem incidents similar to Hogue's incident. On October 7, 1992, following a hearing, this Court granted Hogue's Motion for Sanctions and ordered discovery reopened with the reasonable costs of that reopened discovery to be borne by Fruehauf. Subsequent to the Court's October 1992 ruling, a deluge of previously undisclosed information came into Hogue's possession.

It is clear to this Court that the attorney representing Fruehauf at this point in time, Lyndon C. Molzahn, has made a good faith effort to collect and provide relevant discovery, and there is *no* indication in this record that attorney Molzahn was in any way responsible for any discovery abuses that are attributable to Fruehauf.

Since July 1992, when the 1985 NHTSA letter was disclosed, the production of infor-

mation has included material such as specific files dealing with the sliding tandem problem (e.g., the "Capryan Chron" file and the "Sweda Slider problem" file); information regarding NHTSA testing of the sliding tandem problem; evidence that a list of personal injury cases alleging identical or similar product defects existed in Fruehauf's Legal Department; and other information involving several complaints related to sliding tandem problems with Fruehauf trailers. This previously undisclosed information continued to be provided by Fruehauf to Hogue through the time of the evidentiary hearing held by the Court on this Motion, almost a year following this Court's order reopening discovery.

On September 15 and 16, 1993, the Court held an evidentiary hearing on this Motion for Default Judgment. In addition to exhibits, the Court considered written and video depositions, as well as witness testimony, from: Alan Sweda, former Fruehauf Director of Reliability and Quality Assurance from 1981 through 1992; Ray Dabao, former Fruehauf Senior Product Engineer; Lawrence Bourbeau, Jr., former Fruehauf Assistant General Counsel from November 1986 to April 1989; Richard Darke, former Fruehauf General Counsel; Arnold Przepiora, Fruehauf Manager of Component Engineering, former Fruehauf Director of Product Development, and the expert witness for Fruehauf in a related case, *Howard v. Fruehauf;* Fred Buck, Fruehauf's counsel in the *Howard* case; Robert Gullo, Fruehauf Assistant General Counsel; Frank Capryan, former Fruehauf Manager of Governmental Safety Standards; Frank Miller, Fruehauf Vice President of Reliability and Quality Assurance and former Fruehauf General Manager of Research and Development; and Pat Lancaster, Fruehauf Associate General Counsel. Following the close of evidence, the Court granted Hogue's Motion for Default Judgment on liability. The following is a brief synopsis of the evidence, the Court's findings, and the Court's ruling on this Motion. This written Order is intended to supplement the lengthy Findings of Fact and Conclusions of Law announced by this Court orally on the record at the end of the evidentiary hearing.

The reasons given by Fruehauf for not complying with discovery in a timely manner in this case can be placed into one of four categories: (a) a lack of corporate communication, intra-department as well as inter-department; (b) Fruehauf "file retention policy;" (c) a supposed distinction between complaints of product defects determined to be covered by warranty and complaints about product defects found by Reliability and Quality Assurance (supposedly none) not to be covered by warranty but compromised or settled with the customer by the Sales Department in an effort to keep the customer happy; and (d) inadequate staffing and resources within Fruehauf's Legal Department.

Regardless of Fruehauf's stated reasons for not complying with the discovery rules, a few facts are painfully obvious to this Court. The sliding tandem problem was commonly known throughout the Fruehauf Corporation. The Reliability and Quality Assurance Department, the Engineering Department, the Research and Development Department, and the Legal Department were all aware of the alleged problems relating to sliding tandems egressing from Fruehauf trailers and causing property damage and/or personal injury. Teletypes on one date alone show that customer Scheduled Truckways had experienced sliding tandem problems with 16 units. Fruehauf made settlements amounting to hundreds of thousands of dollars as a result of complaints relating to sliding tandem problems. The record establishes that the "Capryan Chron" file, created and maintained by Frank Capryan, former Fruehauf manager of Governmental Safety Standards, existed at least since 1986, but was not produced until approximately July 1992. A May 30, 1985, NHTSA letter indicating 14 accidents and 13 total tandem axle separations was not produced until July 1992. The "Sweda Slider Problem" file, produced in January 1993, was found in an open credenza in Alan Sweda's former office. As of the date of the evidentiary hearing on this Motion, a list of personal injury cases relating in part to sliding tandem incidents created and maintained by Richard Darke, former General Counsel at Fruehauf, had not yet been produced. These facts and more exist demonstrating the egregiousness of Fruehauf's

omissions in complying with the discovery process in this case. It is clear that Fruehauf violated the Federal Rules of Civil Procedure by either knowingly or recklessly filing false or incomplete answers to written discovery requests served by Plaintiff Hogue on Fruehauf. Whether the violations were intentional and the information provided was then consequently false as opposed to Fruehauf recklessly disregarding its duty to provide the proper answers in discovery is for purposes of this motion immaterial. It was one or the other.

Miller and Sweda, of the Reliability and Quality Assurance Department, blame this discovery gap on a distinction as to whether a complaint of a sliding tandem problem was dealt with as a warranty problem or instead was referred to the Sales Department for their handling in an effort to keep the customer happy. Miller and Sweda were the persons in charge of the Reliability Department. They stated that they only maintain files on warranty problems, not complaints about products that were determined not to be warranty problems but instead were resolved by the Sales Department. At the same time, the persons in charge of the Legal Department contend that they also kept no records of lawsuits pending or otherwise, and relied on the Reliability and Quality Assurance Department to provide information regarding other incidents so that they could properly respond to discovery requests.

Adam Sweda seems to be the person pointed out as the one most responsible for maintaining, gathering, and providing most of the information requested during discovery. According to Sweda, however, he never provided the information sought in this case because he only was required to provide information that was determined by him to be a "warranty problem." It is not disputed that Sweda failed to provide information that he had in his possession, such as the Capryan Chron file and the Sweda Slider Problem file. The Capryan Chron file and the Sweda Slider Problem file clearly demonstrate that Sweda knew of the sliding tandem problem and the fact that there had been a number of incidents involving allegations of product defects regarding sliding tandems. This Court

finds unbelievable Sweda's explanation as to why he failed to proffer the information available to him. This Court has considered the substance of his excuses, the position he held with Fruehauf, as well as the credibility of his statements taken in general context. The Court does not believe that Sweda misunderstood the degree or nature of his responsibilities with respect to providing information for discovery. The Court does not believe that Sweda could be *that* mistaken concerning what was expected of him in regard to providing discovery responses and at the same time be capable of carrying out his other corporate responsibilities in a manner consistent with the position he held as Director of Reliability and Quality Assurance. Sweda admittedly knew about the slider problem, the incidents related to the slider problem, the NHTSA investigation, the communications between Fruehauf and other companies experiencing the same or similar type of problems, and the communications among the various departments within Fruehauf concerning the slider problem. While it is difficult for the Court to determine the exact discussions between Sweda and the other departments or Sweda and Miller, Sweda clearly dealt with the slider problem on a regular basis with other corporate departments and with his immediate supervisor, Miller, within his own department. The distinction that Sweda claims that he made between warranty problems and problems that were referred to the Sales Department to keep the customer happy is ludicrous and is not entitled to any credibility whatever.

The Court also finds incredible the testimony of the head of the Reliability and Quality Assurance Department, Miller. Miller testified that he first heard of the NHTSA investigation only after it was over and then only to the extent that the 1985 NHTSA letter had been received. Common sense would dictate that any department head in Miller's position would have been extremely upset if he had not been previously notified of an investigation with the import of a NHTSA investigation. At the hearing, Miller assigned no significance to this matter. The Court finds this not to be credible. It also is incredible that Miller does not recall seeing any correspondence with regard to the sliding tandem problem. The volume of correspondence produced as a result of this Motion alone indicates that the slider problem was commonly known throughout the Reliability Department and the rest of the Fruehauf Corporation, as well as among major Fruehauf customers.

The Fruehauf in-house Legal Department offered a host of reasons for not complying with discovery in this case. This Court finds these reasons to be irrelevant or lacking in credibility. First, the Legal Department indicated that it was unaware of the NHTSA investigation. A NHTSA investigation for a corporation is a serious matter holding a host potential problems, including the possibility of recall, bad publicity, product liability, etc.

Second, Lawrence Bourbeau, Jr. testified that he was unaware that a list of personal injury cases was created and maintained by his predecessor, Darke, within a computer file in the Legal Department. Even if Bourbeau did not specifically know of this particular list, the Court finds it hard to believe that someone in the Legal Department did not know of other litigation, past and present, involving the sliding tandem problem. Bourbeau stated that he was simply unaware of other similar cases (but his predecessor was aware and kept a list of them). The facts indicate that a significant number of complaints and incidents had been reported with respect to slider problems. While it is hard to tell whether Bourbeau was acting incompetently as opposed to acting in an obstructive manner, the Court finds it impossible to believe that Bourbeau did not know of other litigation concerning the sliding tandem problem. Considering the type, frequency, duration, and breadth of the incidents regarding the sliding tandem, the Court finds it preposterous that the Fruehauf Legal Department did not have a master file on pending litigation, previous litigation resolved at trial or settlement, or the NHTSA investigation regarding the sliding tandem. Based on this Court's experience, corporations do not settle cases for hundreds of thousands of dollars, as Fruehauf has done here in related litigation, without assessing the value of a case based in part on some comprehensive

understanding as to the degree of exposure or risk if a matter is taken to trial.

Bourbeau also asserted that discovery was not correctly provided because the staff of the Legal Department was substantially reduced in the latter part of the 1980's. All of the attorney witnesses who testified in this trial gave basically that same testimony. During the period of time from 1987 to 1992, Fruehauf did apparently significantly downsize its Legal Department, resulting in a situation where a small number of lawyers had too many things to do and not enough time to do any of them. There was testimony offered concerning files stacked on the floor, periods of time when there was no secretary available, etc. This Court finds this type of excuse totally irrelevant. The duty of corporations to answer questions accurately and fully cannot be usurped by simply proffering an excuse that its legal department was understaffed. Fruehauf, through its various business permutations in the late 1980's and early 1990's, retained its obligation to answer discovery requests fully. To find otherwise would be say to a corporation that it could avoid its important legal obligations by downsizing its legal department and support staff. Such a scenario would be ludicrous. A corporation has a duty to maintain sufficient legal staff to fully and accurately respond to discovery requests. If it cannot do so, it should not be in business.

The Court also notes that Robert Gullo, Assistant General Counsel, stated that the Capryan Chron file was brought to his attention in July of 1992. The file, however, was not produced to Hogue's counsel until two months later. Fruehauf has offered no explanation concerning this two month gap.

In short, the Court finds Fruehauf's explanations for not complying with discovery in a proper fashion in this case totally preposterous. These discovery events have extended over a period of five years. The Fruehauf people who were in a position to provide discovery in this case were corporate managers and officers. Excuses such as misfiling, failure to create files, losing files, communication problems between department heads, and memory problems have been proffered

here by Fruehauf. The Court finds these excuses highly implausible. According to the scenario as described by the witnesses from Fruehauf, everyone in every department at Fruehauf seemed to operate as an island. According to their explanation of the dynamics of this corporation, there really was no effective communication within a department or from one department to another. Whether Fruehauf acted with deliberate indifference, reckless disregard, or intentionally, the Court cannot say with certainty. The Court can find, however, that all the managers and officers of Fruehauf who have testified or who have been deposed in this matter have hidden behind an assertion that they did not know of information that should have been provided in discovery, and consequently they should not be held responsible. The Court finds that the people involved here were in a position to gather information concerning prior incidents or prior claims, maintain and preserve the information, and make some serious effort to see that the responses given to discovery requests were both accurate and complete.

The very integrity of the civil justice system depends on compliance with the discovery rules. Discovery cannot be a game of hide-and-seek. Our discovery system depends in large part on self-reporting. When discovery requests are made by a party, the party to whom the request is made has an obligation to respond accurately and fully.

The magnitude and type of interference with the discovery process which has occurred here constitutes an obstruction with the Court's management of civil cases and a substantial obstruction to the public's interest in the expeditious and just resolution of litigation. In one sense, the Court is reluctant to impose the penalty of default on the issue of liability as a sanction, because the Court fully supports the proposition that claims should be determined on their merits. In this case, however, Fruehauf's conduct can, at best, be characterized as involving a callous disregard for its responsibilities owed to the Court, to the public, and to the Plaintiff in this case. The Court imposes the sanction of default judgment on the issue of liability in this case not merely to penalize

the officers and employees of Fruehauf whose conduct may be deemed to warrant such a sanction against the corporation, but further to deter others who might be tempted to such conduct in the absence of such a deterrent.

### CONCLUSION

Therefore, Plaintiff Hogue's Motion for Default is GRANTED. The Court orders that Fruehauf's answer be stricken; the Court grants default on the issue of liability regarding compensatory damages; the issue of punitive damages will be resolved by the trier of fact at the damages phase of these proceedings; the Court awards reasonable attorney's fees and costs to the Plaintiff in regard to this Motion (the Plaintiff is ordered to submit a supplemental petition setting out the claimed attorney's fees and costs; the Defendant has the right to object to the unreasonableness of the petition); the Court orders the Defendant to submit an affidavit indicating what litigation is presently pending regarding sliding tandems, whether it is this kind of unit or some other kind of unit, and also submit a list of cases involving sliding tandems that have been disposed of in any fashion within the last five years.