Robert SHEA, Plaintiff–Appellee,

v.

Geraldo ANGULO, Hassan Namazee, First Capital Partners, et al., Defendants.

Appeal of: Donald BUTZEN.

No. 93–1187.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1994.

Decided March 21, 1994.

Edward M. Kay, James T. Ferrini, James S. Barber (argued), Kevin J. Young, Susan Condon, Imelda Terrazino, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, IL, for plaintiff-appellee.

Thomas J. Dillon, Roger J. McFadden, Tyrrel J. Penn, McFadden & Dillon, Chicago, IL, for defendants.

John C. Ambrose, Marilyn Martin (argued), Ambrose & Cushing, Chicago, IL, for Donald Butzen.

Before CUMMINGS, COFFEY and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

This is an appeal from the denial of appellant Donald Butzen's motion to intervene in litigation between Robert Shea ("Shea") and First Capital Advisers, Inc. ("FCA"),[1] among others. We have jurisdic-

---

**1.** First Capital Advisers, Inc., is alleged to be a sister corporation of First Capital Partners,

tion pursuant to 28 U.S.C. § 1291 because the denial of a motion to intervene, whether as of right or by permission of the court, is treated in this Circuit as a final appealable order. See, e.g., B.H. by Pierce v. Murphy, 984 F.2d 196, 199, 200 (7th Cir.1993), certiorari denied, —— U.S. ——, 113 S.Ct. 2930, 124 L.Ed.2d 680; Peacock v. Board of School Commissioners of Indianapolis, 721 F.2d 210, 212 n. 2 (7th Cir.1983).

## Background

The underlying litigation in this case is a contract action initiated by Shea in Illinois state court in July 1991 against several defendants, including FCA. The defendants removed that suit to federal district court because the parties are of diverse citizenship. Eventually the court granted motions to dismiss all of the defendants except FCA. Shea then filed an amended complaint alleging that in July 1989 he and FCA contracted that Shea, a stock broker, would introduce FCA, a registered investment adviser, to certain prospective clients. If those clients subsequently retained FCA to manage all or part of their portfolios, then FCA would place all of its trades on behalf of those clients through Shea's brokerage firm, thereby generating commissions for Shea. He further alleged in his amended complaint that he had introduced FCA to several clients that had subsequently retained FCA to manage portions of their portfolios, but that FCA, in breach of its contract with him, had failed to place all of its trades on behalf of those clients through his brokerage firm. Shea alleged damages in the form of lost commissions in excess of $50,000. In addition to his allegations of breach of contract Shea also alleged, in the alternative, that based on the same facts he was entitled to recover on theories of quantum meruit or promissory estoppel.

On October 16, 1992—well over a year after Shea's suit was first filed and after substantial discovery had occurred—appellant Donald Butzen ("Butzen") moved to intervene in the suit between Shea and FCA. In his motion Butzen alleged that "at all times relevant hereto" he and Shea had an oral partnership agreement that they would split equally all commissions generated by either of them, and that "at all times relevant" Shea was acting on behalf of the partnership. R. 67. Paraphrasing two of the four requirements for intervention as of right, Fed.R.Civ.P. 24(a)(2), Butzen alleged without elaboration that he "ha[d] a special interest relating to … the subjects of this action … and [that he was] so situated that the disposition of the action without his presence as a party [might] as a practical matter impair or impede his ability to protect his interest." R. 67. Addressing the two remaining requirements for intervention as of right, Butzen alleged that his interest would not be adequately represented by the existing parties because Shea denied the very existence of a partnership agreement between them, and that his motion was timely because he had only learned of the litigation on October 1, 1992. Id. He filed no affidavits or memoranda of law in support of this motion.

Defendant FCA and plaintiff Shea filed separate responses opposing the motion. Shea's response acknowledged that he and Butzen were partners at one time, but denied that the partnership was in effect at the time of the Shea–FCA dealings. R. 73 at 3. Shea also attached an affidavit in which, apparently in support of the position that Butzen's motion to intervene was not timely, he stated that he had informed Butzen in April 1991 that he was going to sue FCA and the other defendants, and in which he claimed that his attorney met with Butzen in June 1991 in preparation for the lawsuit. R. 73, attached affidavit.

Butzen then filed a reply in support of his motion to intervene, in which he argued, first, that Shea did not have the resources to litigate the case vigorously, and second, that Shea was likely to compromise his claim in a manner that would benefit only himself and not the Butzen–Shea partnership. R. 75. Butzen attached an affidavit to his reply. Apparently in support of the claim that Shea did not have the resources to litigate the case vigorously, Butzen stated in his affidavit that

---

which is not a defendant in Shea's suit but to which Shea's Amended Complaint at times re-

fers. This opinion will use "FCA" to mean both First Capital Advisers and First Capital Partners.

due to Shea's distressed circumstances Butzen had earlier satisfied a partnership debt in full, resulting in Shea's issuing Butzen a promissory note for Shea's portion of the obligation, and that Shea had not paid any interest or principal on the note since 1988. In support of the claim that Shea was likely to compromise his claim in a way prejudicial to Butzen's interests, Butzen stated that Shea had informed him in April 1991 that Shea was going to accept an offer of employment from FCA and that the partnership with Butzen was over. We may infer from the affidavit that Shea did not in fact accept the offer of employment. Butzen also informs us that Shea later told him that one of the principals at FCA was not to be trusted. Additionally, apparently in support of the timeliness of his motion, Butzen stated that Shea had not informed him of the filing of this lawsuit and that he was unaware of it until October 1992. Butzen further stated, however, that in May 1991 Shea had informed Butzen that Shea had asked his own employer, Kemper Securities, to sue FCA, but that the employer declined to do so. Butzen also stated that he met with Shea's lawyers, at Shea's request, in June 1991, but that subsequently Shea informed Butzen that the lawyers were not going to take the case. Finally, Butzen stated that Shea thereafter refused to talk to him at all.

■ Eventually the district court denied Butzen's motion to intervene on the ground that Butzen had failed to meet two of the four criteria of intervention as of right: impairment of interest and inadequacy of representation. Butzen moved the court for clarification, arguing that his motion for intervention encompassed permissive intervention as well as intervention as of right and that the court in its initial ruling had addressed only the issue of intervention as of right. Although there were serious questions as to whether Butzen's original motion had included permissive intervention, the court ruled from the bench on the merits of such a motion and denied it.[2] This appeal followed.

### Analysis

■ Federal Rule of Civil Procedure 24(a), Intervention of Right, provides in full:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Because Butzen does not argue that a federal statute gives him an unconditional right to intervene, his motion is governed by Rule 24(a)(2).

■ Rule 24(a)(2) establishes four conjunctive criteria for intervention as of right:

(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action.

*Southmark Corp. v. Cagan*, 950 F.2d 416, 418 (7th Cir.1991), quoting *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 203 (7th Cir.1982). The district court

**2.** The decision to deny a motion for permissive intervention is reviewed for abuse of discretion. *B.H. by Pierce*, 984 F.2d at 200. "Reversal of a district court's denial of permissive intervention is a very rare bird indeed, so seldom seen as to be considered unique." *United States v. Pitney Bowes, Inc.*, 1994 WL 19616, *8 (2d Cir. Jan. 27, 1994). In this case there was certainly no abuse of discretion in denying the motion for permissive intervention, if Butzen indeed made one: With respect to the discretion of the district court Fed.R.Civ.P. 24(b) states, "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." As is evident from the discussion below concerning the motion for intervention as of right, allowing Butzen to intervene in this action would insert into it a complex factual question, completely unrelated to the quarrel between the original parties to the suit. This would unduly delay the adjudication of the rights of the original parties. The district court's denial of the motion for permissive intervention was not, therefore, an abuse of discretion.

denied Butzen's motion to intervene as of right because it found on the basis of the materials provided by the parties [3] that Butzen could not meet the final two criteria of Rule 24(a)(2), potential impairment of interest and inadequacy of representation.

■ With respect to the impairment prong the court noted, "Impairment exists when the decision of a legal question ... would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding." S.A. 3, citing *Meridian Homes Corp.*, 683 F.2d at 204. See also *American National Bank and Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144, 147–148 (7th Cir.1989). In the court below and in this Court, Butzen focused most of his argument on the possibility that Shea would win a judgment against FCA, arguing that such an outcome would impair his interest. As the district court observed, however, whether or not Shea recovers from FCA, Butzen remains free to initiate his own suit against Shea to recover his share of the alleged partnership earnings. The district court correctly held, therefore, that—even if he could prove the allegations contained in the materials submitted to that court—there is no potential impairment of Butzen's interest as a result of the disposition of the Shea–FCA action.

■ Butzen now argues, somewhat cryptically, that "the real focus ... should be upon the claim Appellant Butzen has against the Defendants in the underlying action." Br. at 37. Butzen's position is that "Shea, in entering into the agreements with [FCA], was acting on behalf of the Shea–Butzen partnership. Thus, the agreements were entered into between the partnership and [FCA]." Reply Br. at 4. Butzen appears to suggest that if Shea loses his suit against FCA, Butzen will be bound by the result because Shea "is suing on behalf of the partnership." Br. at 36. Butzen is correct that if Shea were suing on behalf of the partnership, then Butzen would be bound by a judgment in favor of FCA on that suit. Restatement (Second) of Judgments § 60. Butzen offers no citation to the record, however, in support of his claim that Shea is suing on behalf of the partnership; indeed, it is clear that Shea, who denies that the partnership even existed during his dealings with FCA, is not suing on behalf of the partnership but rather is suing on his own behalf. Further, Butzen offers no citation to caselaw to suggest that he cannot pursue a partnership suit against FCA if, as seems clear, Shea is not suing on behalf of the partnership, nor does Butzen point us to any relevant statute of limitations. For these reasons Butzen has not demonstrated any potential impairment of his interest.

■ With respect to the representation prong the court noted that "Butzen and Shea ... have the same objective in this litigation: the maximization of a financial recovery from defendant." S.A. 4, citing *Bottoms v. Dresser Industries, Inc.*, 797 F.2d 869 (10th Cir. 1986). Where a prospective intervenor has the same goal as the party to a suit, there is a presumption that the representation in the suit is adequate. *Doe v. Duncanville Independent School District*, 994 F.2d 160, 168 (5th Cir.1993); cf. *United States v. South Bend Community School Corp.*, 710 F.2d 394, 396 (7th Cir.1983), certiorari denied *sub nom. Brookins v. South Bend Community School Corp.*, 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 181. In such circumstances, the proposed intervenor "must demonstrate, at the very least, that some conflict exists." *Meridian Homes Corp.*, 683 F.2d at 205. The district court correctly held that, assum-

---

**3.** Butzen argues that the district court's ruling on his motion to intervene without first holding an evidentiary hearing violated his right to due process of law. Br. at 47. But the district court determined, as do we, that even if Butzen were able to demonstrate—at great expense of time and effort on the part of all concerned—every allegation contained in the materials submitted to the district court, he still would not be entitled to intervene in the Shea–FCA action. "Whether the court's determination comported with due process is dependent on what process was due." *Meridian Homes Corp.*, 683 F.2d at 205 (citations omitted). Because a court may deny a request for an evidentiary hearing when it is clear from the record that the movant is not entitled to intervene, *Kneeland v. National Collegiate Athletic Association*, 806 F.2d 1285, 1289 (5th Cir. 1987), certiorari denied *sub nom. Southern Methodist University v. Kneeland*, 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 35 the district court did not err in disposing of Butzen's motion without a hearing.

ing Butzen's allegations to be true, he nonetheless could not meet this burden.

■ Butzen proffers two reasons that Shea's representation is inadequate. The first is that representatives of FCA at one time discussed the possibility of hiring Shea. Butzen argues that this indicates a conflict of interest between himself and Shea. But as the district court noted, "the goal of [Shea's] lawsuit is not to require [FCA] to hire plaintiff," rather, it is recovering the largest amount of money from the defendant. S.A. 4. The second, and related, reason that Butzen offers to show that Shea's representation is inadequate is that Shea owes him money. This indicates, says Butzen, that Shea has inadequate financial resources to pursue this litigation vigorously and that Shea has an improper incentive to settle the suit for less than it is worth. The district court in this respect found as a fact that Shea's actions thus far have not indicated inability to pursue the litigation. *Id.* We agree with the district court that Butzen's two reasons, alone or in combination, are not enough to defeat the presumption of adequate representation. Finally, we find implausible, given the history between FCA and Shea, Butzen's stated concern that Shea will drop his suit against FCA in exchange for employment there.

This case is analogous to *Bottoms v. Dresser Industries, Inc.,* 797 F.2d 869 (10th Cir. 1986). In that case Bottoms had brought suit against Dresser Industries to recover royalties he claimed were due pursuant to a licensing agreement whereby Dresser would pay Bottoms five percent of net sales and rentals of all devices that infringed on a patent held by Bottoms. After discovery had been essentially completed a third party, Foster, brought a motion to intervene as of right, alleging that he and Bottoms had entered into a partnership agreement whereby Foster was entitled to a one-half interest in the patent at issue in the Bottoms–Dresser action. The district court denied the motion to intervene on the same grounds advanced by the district court in the case at bar, that is, Foster could not demonstrate either impairment of interest or inadequacy of representation. *Id.* at 871–872. The Tenth Circuit affirmed.

With respect to adequacy of representation the *Bottoms* court reasoned that Bottoms and Foster had the same goal in the litigation, maximizing the amount of royalties Dresser owed under the licensing agreement, and that Foster had not overcome the ensuing presumption of adequate representation by alleging that Bottoms might structure a settlement with Dresser in such a way as to prevent Foster from recovering his share. *Id.* at 872–873. Likewise, in the case at bar Butzen and Shea have the same goal, maximizing recovery from FCA, and Butzen has not overcome the ensuing presumption of adequate representation by alleging without support that Shea might conceivably structure a settlement with FCA that trades employment for recovery. With respect to impairment of interest the Tenth Circuit held that even if Foster were bound by a settlement between Bottoms and Dresser so that he could not institute his own suit against Dresser, his interest was not impaired because he could still sue Bottoms. And, the court held, the possibility that Bottoms might dispose of the settlement proceeds before Foster could reach them was not sufficient to find impairment of interest. *Id.* at 873–874. In the case at bar Butzen has advanced nothing to suggest that he would be bound by an unfavorable outcome of the suit between Shea and FCA, and so there is even less reason than in *Bottoms* to find impairment of interest.

■ The district court did not err, therefore, in holding that on the basis of the materials submitted to it, Butzen could not meet at least two of the four criteria for intervention as of right, those being potential impairment of interest and inadequacy of representation. We note, in addition, that it would not have been error for the court to have denied this motion on timeliness grounds. Whether a motion to intervene was made in a timely fashion is determined by reference to the totality of the circumstances. *Schultz v. Connery,* 863 F.2d 551, 553 (7th Cir.1988). There are four factors that should be considered in making such a determination:

(1) The length of time the intervenor knew or should have known of his interest in this case, (2) the prejudice to the original parties caused by the delay, (3) the resulting prejudice to the intervenor if the motion is denied, and (4) any unusual circumstances. *South v. Rowe,* 759 F.2d 610, 612 (7th Cir. 1985). Determining whether an application to intervene is timely is committed to the sound discretion of the district court. *United States v. City of Chicago,* 908 F.2d 197, 199 (7th Cir.1990), certiorari denied *sub nom. Feldman v. United States,* 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846. This is true even of motions to intervene as of right. Cf. *Schultz,* 863 F.2d at 553. While we do not suggest that the district court was prohibited from finding, in its discretion, that Butzen's motion was timely made, we may comment in passing that no abuse of discretion would have occurred had the court denied Butzen's motion on the ground of untimeliness alone. Cf. *Bottoms,* 797 F.2d at 874 (discussing timeliness of motion even though the district court apparently did not reach that issue).

With respect to the first factor, the length of time the intervenor knew or should have known of his interest in the case, the parties agree that Shea informed Butzen shortly before bringing this suit that he intended to do so, and that Butzen then met with Shea's attorneys in preparation for the suit. This indicates at the very least that Butzen should have known of this lawsuit from its inception. Butzen now reminds us that "There is obviously a very big difference between *filing* a suit and expressing the *intention* to file a suit," Br. at 27, but we believe that under the facts of this case Butzen could reasonably be expected to inquire, sometime prior to seeking intervention in October 1992, whether Shea had in fact filed suit. With respect to the second factor, the prejudice to the original parties caused by Butzen's delay is substantial—discovery was just winding up when Butzen brought his motion to intervene, which raised numerous factual issues that would have to be resolved before the original parties could hope to reach the merits of their dispute. The prejudice to Butzen on account of denying this motion, on the other hand, is slight, since his real quarrel is with Shea and he continues to have access to state court to resolve it. Finally, the only unusual circumstance in this case is the amount of court resources that would have to be devoted to resolving partnership issues between Shea and Butzen that are entirely collateral to the suit between Shea and FCA, a circumstance that clearly militates against excusing Butzen's delay in making his motion. Cf. *Bottoms,* 797 F.2d at 874.

### Conclusion

Intervention is a procedural device that attempts to accommodate two competing policies: efficiently administrating [sic] legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand.... In resolving the tension that exists between these dual concerns, the particular facts of each case are important, and prior decisions are not always reliable guides.

*United States v. Pitney Bowes, Inc.,* 1994 WL 19616, *2 (2d Cir. Jan. 27, 1994) (citations omitted). In this case the "two competing policies" are not in competition at all: With respect to the first policy, it would not be more efficient to resolve Butzen and Shea's dispute in this lawsuit rather than in a separate action, because the quarrel between Butzen and Shea is so wholly unrelated to the quarrel between Shea and FCA; and with respect to the second policy, Butzen's intervention would make this suit unnecessarily complex, unwieldy and prolonged. Cf. *Bottoms,* 797 F.2d at 874 ("Allowing the intervention could only cause delay and inject elements into the suit totally irrelevant to whether Dresser had breached the licensing agreement.").

For the foregoing reasons, the decision of the district court is affirmed.