PETERSON BUILDERS, INC., Plaintiff,

and

United States of America,
Plaintiff–Intervenor,

v.

A.C. HOYLE COMPANY, Defendant.

No. 92–C–1004.

United States District Court,
E.D. Wisconsin.

Oct. 20, 1995.

Pinkert, Smith, Weir, Jinkins, Nesbitt & Hauser by Roger Pinkert, Sturgeon Bay, WI, for Peterson Builders, Inc.

Thomas P. Schneider, U.S. Atty., by Penelope C. Fleming, Asst. U.S. Atty., Milwaukee, WI, for the U.S.

Peterson, Johnson & Murray by Ronald G. Pezze, Jr., Quale, Feldbruegge, Calvelli, Thom & Croke, by Terrence C. Thom (cocounsel), Milwaukee, WI, for A.C. Hoyle Co.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

On September 23, 1992, plaintiff Peterson Builders, Inc. ["Peterson"] commenced this action against defendant A.C. Hoyle Company ["Hoyle"] seeking declaratory relief. Jurisdiction is based upon 28 U.S.C. § 1332. Presently before the court is Hoyle's appeal from a September 18, 1995, order entered by Magistrate Judge William E. Callahan, Jr. granting the United States' motion to intervene in this action.

Pursuant to Local Rule 13.02(b), a party may appeal to a district judge from a magistrate judge's determination of a non-dispositive pretrial matter within ten days after issuance of the magistrate judge's order. The district judge shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Local Rule 13.02(b).

### I. BACKGROUND

In its complaint, Peterson alleges that it entered into a contract with Naval Sea Systems Command, Department of the Navy, ["the Navy"] for the construction of mine counter measure vessels ["MCM vessels"]. The plaintiff asserts that on November 16, 1989, it entered into a separate contract with the Navy to handle the selection of and negotiation with subcontractors to provide services and equipment for use on the MCM vessels to be constructed by Peterson.

Peterson maintains that under the November 16, 1989, agreement it was obligated to negotiate and execute agreements with subcontractors to ensure the availability of equipment for the MCM vessels which were to be constructed. The plaintiff alleges that it entered into five separate "option agree-

ments" with Hoyle. Peterson claims that after four of the five contracts had been "exercised," Hoyle expressed an interest in renegotiating the option agreements to cover the remaining MCM vessels planned for construction.

The plaintiff asserts that on April 30, 1987, Peterson and Hoyle entered into an agreement whereby the five previous "option agreements" between the parties would be modified. Peterson alleges that revised agreements were thereafter executed, with prices to be determined in accordance with the parties' April 30, 1987, agreement and the applicable federal acquisition regulations. The plaintiff claims that it thereafter exercised the revised agreements.

Peterson asserts that Hoyle claimed entitlement to and received payment for the maximum price quoted under the revised agreements in the amount of $6,955,713. Pursuant to the April 30, 1987 agreement, the defense contract audit agency conducted an audit of the pricing by Hoyle under its agreements and determined that an insufficient basis existed for charges in the amount of $1,261,524.

Peterson alleges that Hoyle has been advised of the results of the audit and has failed adequately to support the basis for the questioned costs. The plaintiff claims that an actual controversy exists with respect to Hoyle's entitlement to the disputed $1,261,-524. Peterson maintains that declaratory relief is required to determine Hoyle's compliance with the applicable pricing requirements of the federal acquisition regulations and with the agreements between Hoyle and Peterson.

This case is quite old and was recently reassigned to Magistrate Judge Callahan. On August 15, 1995, the United States filed a motion to intervene in this action. The government seeks leave to file a complaint in intervention against Hoyle asserting a claim of common law fraud, a claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* and a claim of unjust enrichment.

Although the United States moved for leave to intervene under Rule 24(a)(2)—as a matter of right—and also under Rule 24(b)(2)—for permissive intervention—in an order dated September 18, 1995, Magistrate Judge Callahan granted the government's motion to intervene pursuant to subsection (b). On September 26, 1995, Hoyle filed both a motion for reconsideration of the magistrate judge's order and an appeal from that order. It is the defendant's appeal that will be addressed in this decision.

## II. ANALYSIS

Rule 24(b)(2), Federal Rules of Civil Procedure, provides, in relevant part:

Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

Rule 24(b)(2) also states that in exercising its discretion, the court should consider whether intervention will result in undue delay or prejudice to the rights of the original parties. The defendant contends that the magistrate judge "erroneously assumed that certain contracts, in fact, actually existed...." Hoyle also maintains that the motion to intervene was untimely.

█ In deciding whether to grant permissive intervention under Rule 24(b)(2), a court must consider three factors: (1) whether the petition was timely; (2) whether a common question of law or fact exists; and (3) whether granting the petition to intervene will unduly delay or prejudice the adjudication of the rights of the original parties. *Southmark Corp. v. Cagan,* 950 F.2d 416, 419 (7th Cir.1991).

█ The defendant's argument regarding the existence of contracts between the parties is not impressive. It is apparent that the government's claims and Peterson's claims have common questions of law and fact as they are both based upon the same transactions between Peterson and Hoyle. Hoyle may dispute the validity or existence of the agreements between the parties at trial. The magistrate judge was not required to address the merits of the government's claims in resolving its motion to inter-

vene. The government's complaint in intervention sets forth its allegations in sufficient detail. The United States has satisfactorily established that its claims and Peterson's claims involve common questions of fact.

The more troubling issue is the timeliness of the proposed intervention. This action was pending for nearly three years before the United States submitted its motion to intervene. The government offers no explanation for its failure to seek to intervene in this action prior to August 1995, but it urges that its entry into this case will not prejudice the defendant. Specifically, the United States claims that it can rely on discovery previously exchanged between Peterson and Hoyle and that intervention will not intrude on the setting of a trial date.

The defendant maintains that it will be prejudiced by the government's entry into this case. Hoyle asserts that its founder and president, Albert Hoyle, who had substantial knowledge regarding this case, died in April 1993. Hoyle also contends that it has not been in operation "for years" and that it is unable to locate many of its former employees to assist its attorneys in this litigation. As a result, the defendant maintains that it would be prejudiced by the government's assertion of new claims against it at this stage of the proceedings.

 Whether a motion to intervene was made in a timely fashion is determined based upon consideration of the "totality of the circumstances." *See Shea v. Angulo,* 19 F.3d 343, 348 (7th Cir.1994) (considering a motion for intervention as of right under Rule 24(a), Federal Rules of Civil Procedure). Under this approach, the court may consider:

> (1) The length of time the intervenor knew or should have known of his interest in this case, (2) the prejudice to the original parties caused by the delay, (3) the resulting prejudice to the intervenor if the motion is denied, and (4) any unusual circumstances.

*Id.* at 349. Intervenors must act with reasonable dispatch upon learning of a suit in which they may seek to intervene. *See Nissei Sangyo America, Ltd. v. United States,* 31 F.3d 435, 438 (7th Cir.1994) (motion under Rule 24(a)). The passage of time itself is not the only factor in addressing the timeliness of a motion to intervene; rather, the most important consideration is whether a delay in moving for intervention will prejudice the existing parties to the case. *Id.* at 439.

 While the United States waited a very long period of time (35 months) before filing its motion to intervene, I do not believe that the government's intervention will either delay the resolution of this case or prejudice Hoyle. Hoyle's cessation of operations in 1990 and Mr. Hoyle's death in early 1993 have little impact on the government's motion to intervene. Hoyle allegedly ceased doing business prior to the commencement of this action; Mr. Hoyle died shortly after this action was started. As both events occurred fairly close in time to the commencement of this action, it is unlikely that the government's earlier intervention would have permitted the defendant to obtain significant information from either Mr. Hoyle or Hoyle's former employees to assist Hoyle in its defense against the government's claims.

Moreover, as correctly noted by the magistrate judge, this case has not yet been scheduled for trial. While the government's substantial delay in seeking to intervene casts some doubt upon the propriety of allowing the United States to intervene, the magistrate judge's decision to permit the government to do so is not "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Local Rule 13.02(b).

## ORDER

Therefore, IT IS ORDERED that the magistrate judge's decision to permit the United States to intervene in this action be and hereby is affirmed.