Robert REICH, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

ABC/YORK–ESTES CORPORATION and Michael G. Wellek Individually, Defendants.

No. 91 C 6265.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 23, 1994.

---

Janet M. Graney, Denise C. Hockley–Cann, Christine E. Zuehlke, U.S. Dept. of Labor, Office of the Sol., Chicago, IL, for plaintiff.

Robert Edward Bull, Altheimer & Gray, Chicago, IL, Gregory Adam Adamski, Karen Conti, Shannon Mary Heilman, Adamski & Conti, Chicago, IL, Michael J. Rovell, Lisa I. Fair, Law Offices of Michael J. Rovell, Chicago, IL, for ABC/York–Estes Corp.

Robert Edward Bull, Altheimer & Gray, Gregory Adam Adamski, Karen Conti, Shan-

non Mary Heilman, Adamski & Conti, Michael J. Rovell, Lisa I. Fair, Law Offices of Michael J. Rovell, David Philip Schippers, Schippers, Gilbert & Bailey, Chrtd., Chicago, IL, for Michael G. Welleck.

Harvey M. Silets, Sara Elizabeth Elder, Katten, Muchin & Zavis, Chicago, IL, for Loumar Corp.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

After appropriate hearings, briefing and review, Magistrate Judge Rebecca R. Pallmeyer on September 2, 1994 issued a thorough and well-reasoned Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) as to certain motions pending in this case which this court referred for that purpose. That Report and Recommendation stated in full is as follows:

REBECCA R. PALLMEYER, Magistrate Judge:

### REPORT AND RECOMMENDATION

On October 2, 1991, the Secretary of Labor ("the Secretary") instituted this action under the Fair Labor Standards Act of 1938 ("the Act"), 29 U.S.C. § 201 et seq., against Defendants ABC/York–Estes Corporation and its president, Michael G. Wellek (hereinafter "ABC" and "Wellek" [collectively referred to as "Defendants"]), operators of the Old Higgins Inn, an entertainment establishment in Elk Grove, Illinois, that features live female dancers. The Secretary alleges that, since August 1989, Defendants have withheld payment of minimum wages and overtime compensation to the dancers in violation of sections 6, 7, 11 and 15 of the Act, 29 U.S.C. §§ 206, 207, 211, 215. Under 29 U.S.C. § 217, the Secretary seeks to enjoin and restrain Defendants from present and future violations of the Act. Under 29 U.S.C. § 216(c), he seeks to recover unpaid back wages and overtime compensation along with applicable interest owing to the dancers and an additional equal amount as liquidated damages.

On September 24, 1993, this matter was referred to this court for necessary proceedings and issuance of a Report and Recommendation on Plaintiff's motion for sanctions.

Three issues are before this court: First, the Secretary has moved for a default judgment against Defendants based upon their willful failure to comply with discovery requests and statutory record-keeping requirements. Second, both parties seek a declaration from the court on the issue of whether certain payments by Defendants' customers to the dancers constitute "tips," as the Secretary asserts, or are instead "service charges," as Defendants urge. Finally, two of the dancers, Rita Erwin and Tammy Senter, seek leave to intervene as additional Defendants. For the reasons explained below, it is recommended (a) that the Secretary's motion for a finding of default be granted, and this matter be set for evidentiary hearing on the amounts owed by Defendants; (b) that the court declare the customer's table dance payments to be "tips" within the meaning of 29 C.F.R. § 531.50; and (c) that the dancers' petition to intervene be denied.

### Background: Secretary's Claim

In his Amended Complaint, the Secretary of Labor alleges that Defendants are engaged in an "enterprise" within the meaning of § 3(r) of the Act, 29 U.S.C. § 203(r), and that the dancers are "employees engaged in commerce or in the production of goods for commerce" within the meaning of §§ 3(s)(1)(A), as amended, 29 U.S.C. § 203(s)(1)(A). (Amended Complaint ¶ IV.) He further contends that Defendants pay the dancers wages below the applicable minimum wage, in violation of 29 U.S.C. §§ 206 and 215(a)(2) (id. ¶ V), and that Defendants employ the dancers for workweeks longer than forty hours without compensating them at rates not less than one and one-half times their regular hourly rates, in violation of 29 U.S.C. §§ 207, 215(a)(2). (Id. ¶ VI.) In addition, the Secretary alleges that Defendants failed to make, keep, and preserve adequate and accurate records of their employees and their wages, hours, and other conditions and practices of employment as prescribed by regulations found in 29 C.F.R. § 516, in violation of §§ 11(c) and 15(a)(5) of the Act, 29 U.S.C. §§ 211(c), 215(a)(5). (Id. ¶ VII.)

Defendants deny that the Old Higgins Inn is an "enterprise engaged in commerce or in

the production of goods for commerce" within the meaning of the Act. (Defendants' Answer, at 2.) They maintain that the dancers on whose behalf the Secretary has brought this suit are independent contractors outside the scope of the Act. (*Id.*) Defendants further contend that even if they were subject to the minimum wage and overtime pay obligations set forth in the Act, they met such obligations by one or more of the following means: (1) direct payments; (2) tips collected from customers; (3) meals or other perquisites provided, either free of charge or on a discounted basis; and (4) mandatory service charges collected from customers with Defendants' consent and retained as compensation by the dancers. (*Id.*) Defendants assert, moreover, that even if all the dancers are properly characterized as "employees" protected by the Act, certain of the dancers are "professional artists" within the meaning of the Act and are therefore exempt from overtime pay requirements. (*Id.* at 3–4.) Finally, Defendants state that because they have acted in good faith and with reasonable grounds for believing that their compensation practices were neither subject to nor in violation of the Act, liquidated damages are unwarranted. (*Id.* at 4.)

## I. *PLAINTIFF'S MOTION FOR SANCTIONS*

This case was initially referred to this court for resolution of Plaintiff's motion for sanctions under Fed.R.Civ.P. 37(b). The Secretary seeks a judgment of default against Defendants ABC/York–Estes Corporation and Michael G. Wellek for Defendants' willful failure to comply with discovery obligations.

### *Factual and Procedural Background*

The background facts are sadly familiar to this court. The Secretary's original Complaint was filed on October 2, 1991. At that time, the Complaint, supported by the Affidavit of Department of Labor Investigator Juan Solano, alleged that Defendants owed some $72,595.30 in backpay and an equal sum in liquidated damages as a result of violations of the Fair Labor Standards Act.

When Defendants failed initially to respond to the summons and complaint, District Judge James Holderman granted Plaintiff's motion for a default judgment on January 21, 1992. (Judgment and Minute Order of 1/21/92.) On February 7, 1992, however, Defendants appeared through counsel and moved the court to vacate the default judgment. On counsel's express assurances that Defendants would comply promptly with all outstanding obligations, particularly production of records and other discovery responses, Judge Holderman granted that motion. (Minute Order of 2/7/92.) The parties agreed at this time that discovery would proceed informally, without the need for formal discovery requests. Over the next several months, the parties appeared before the court on numerous occasions for status conferences and reports on the status of discovery. At a status hearing on May 19, 1992, the Secretary reported that informal efforts to obtain information had been unsuccessful, and that the Secretary had initiated formal discovery by serving a first set of interrogatories and first document request on May 15, 1994. Judge Holderman ordered that documents previously requested by Plaintiff be produced within two weeks. (Minute Order of 5/19/92.) Defendants' counsel failed to appear for a status conference on June 17, 1992; Judge Holderman's order of that date threatened a default judgment if counsel failed to appear at the following status conference. (Minute Order of 6/17/92.)

By July 20, 1992, the Secretary had still not received requested materials and moved for sanctions pursuant to Rule 37(d). Among materials attached to the Secretary's motion was a letter from Defendants' attorney, Gregory Adamski, in which he asked, "What is it that you want? I think that we have given you everything we have." (Letter from Adamski to Hockley–Cann of 7/8/92, Ex. I to Plaintiff's Motion for Sanctions filed 7/20/92.) At the hearing on that motion, Judge Holderman observed:

> [W]hen I lifted the default on [counsel's] representation that he would provide prompt responses to the Plaintiff's requests, I did that on my understanding

that he would do what he said he would do. He has not done so.

. . . . .

You provide that information, and you do it promptly. I don't know how much more I can say. But if it's not done like it ought to be done, like it should have been done months ago, I'm going grant this motion, and the default is going to be entered again....

(Transcript of Proceedings before the Honorable James F. Holderman, 7/20/92, at 2–3.) On August 18, 1992, additional attorneys appeared on behalf of Defendants and, by agreement with attorneys for the Department of Labor, requested a two-week stay of discovery pending efforts to settle the case. Judge Holderman observed: "[W]ith regard to discovery, I expect there to be full compliance with discovery after that two-week hiatus if you aren't able to reach a resolution." (Transcript of Proceedings before the Honorable James F. Holderman, 8/18/92, at 10.) By September 8, 1992, no settlement had been reached. Judge Holderman observed, "I doubt that the government will agree to settle this case without a full disclosure. So if you want the case limited to the one, I guess, legal issue, which is whether these dancers are independent contractors or employees, you're going to have to have a complete disclosure to the government of all other facts that would assist in the resolution of all the other issues." (Transcript of Proceedings before the Honorable James F. Holderman, 9/8/92, at 8.)

On the morning of September 22, 1992, counsel for the Secretary reported she had not yet received certain records from the Defendants; she reminded the court that the court had provided Defendants "with a drop-dead date of Friday, September 18, at 5:00 p.m." (Transcript of Proceedings before the Honorable James F. Holderman, 9/22/92, 10:10 a.m., at 5.) Defendants' attorney, Michael Rovell, reported that he had learned only the previous day that the Secretary's attorneys were not satisfied with the production he had made on September 18 (a production which, according to the Secretary, consisted of only three sheets of paper). Mr. Rovell therefore "met with the client immedi-ately after that, arranged to have more documents ... sent downtown...." (*Id.* at 7.)

When the parties again appeared before Judge Holderman on the afternoon of September 22, Attorney Gregory Adamski reported that Defendant Michael Wellek had told him "that the documents that had been produced this morning were all the documents that he could find, having made an examination yesterday." (Transcript of Proceedings before the Honorable James F. Holderman, 9/22/92, 1:35 p.m., at 4.) Mr. Adamski suggested that the materials the Secretary was seeking might be in the hands of the Loumar Corporation, which held title to the premises on which Defendants' establishment was operated. (*Id.*) Mr. Rovell also appeared for Defendants at that time and reported that, according to Mr. Wellek, "certain documents which they [attorneys for the Department of Labor] have requested simply don't exist...." (*Id.* at 7.) Mr. Adamski, likewise, reported that "the first production I made, which was about 10,000, was, at the time that I made it, all of the documents that my client had." (*Id.* at 8.) Judge Holderman pointed out, however, "They weren't all the documents your client had. They were all the documents your client decided to give you, ... perhaps, because, number one, he didn't want to give you all the documents, or number two, couldn't find all the documents." (*Id.*)

The parties again appeared before Judge Holderman on October 30, 1992. Attorney Denise Hockley–Cann, appearing for the Secretary of Labor, reported that, contrary to Defendants' representations, Loumar Corporation had "indicated that some of the documents which the plaintiff requested are not, in fact, in their possession and are, in fact, in the possession of defendants in this matter, most specifically, ABC/York Estes Corporation." (Transcript of Proceedings before the Honorable James F. Holderman, 10/30/92, at 11.) Addressing the possibility that Loumar Corporation might be named as an additional Defendant, Ms. Hockley–Cann stated, "[I]t depends on—first of all, there's documents that were indicated that the Defendants have, which we still don't have." (*Id.* at 20.) Judge Holderman directed that

they be produced immediately. (*Id.*) To the court's and counsel's surprise, Defendants' attorney, Michael Rovell, reported that there were additional documents in his office at that moment. The court directed that Mr. Rovell telephone his office from the courtroom. (*Id.* at 21.) The status conference ended with Mr. Rovell's assurance that he would personally hand-deliver the documents from his office within a half-hour. (*Id.* at 22.) Later that morning, Michael Rovell called the court's chambers to report that all the documents had been delivered to Plaintiff's counsel. (Court File, Docket No. 43.)

Discovery efforts continued through the fall and winter of 1992–93. On April 13, 1993, the Secretary, having learned that Loumar Corporation was the operator of the restaurant and bar located in the establishment at issue in this case, moved for leave to file an amended complaint. The Amended Complaint names Loumar Corporation as an additional Defendant, and seeks relief on behalf of a number of additional persons the Secretary had learned were entitled to unpaid minimum wage and overtime compensation. (Plaintiff's Motion to File an Amended Complaint, at 2.) In its answer, filed on June 14, 1993, the Loumar Corporation asserted, *inter alia*, that it was not the employer of the persons for whom relief was sought in this case. (Defendant Loumar Corporation's Answer to Amended Complaint, at 6.)

In early July 1993, the Secretary's attorneys took the deposition of Deborah Lynn Binder, the general manager of the Old Higgins Inn; Dolores Kadzie, bookkeeper and paperhandler of the Old Higgins Inn; and Deborah Vibert, the night manager for the Old Higgins Inn. These deponents testified to the existence of a substantial number of documents which had never been produced by Defendants to the Secretary. As a result, on August 27, 1993, Plaintiff filed this motion for sanctions pursuant to Rule 37. Plaintiff's motion and the memorandum in support of that motion pointed out that as of January 21, 1992, this court entered an order directing that ABC and Michael Wellek provide Plaintiff with a list of names of any and all individuals who had worked as dancers at the Old Higgins Inn from August 1989 through October 1991, and to produce records or documents containing information regarding the names, addresses, telephone numbers, and social security numbers of these individuals. Defendants failed to comply with these and other requests, despite repeated court orders. Plaintiff's motion reminded the court that Defendants had made numerous representations during the previous fifteen months that all documents had been produced. Following the depositions of Ms. Binder, Ms. Kadzie, and Ms. Vibert, Plaintiff's counsel again requested additional documents and exchanged correspondence and telephone conversations with Defendants' counsel. As a result, Defendants produced yet another fourteen boxes on July 30, 1993. Once again, however, these documents did not include much of the material that the deponents had testified exists. (Memorandum of Points and Authorities in Support of Plaintiff's Motion for Sanctions Pursuant to Rule 37, filed 8/27/93, at 5–7.)

In support of Plaintiff's motion, Attorney Denise Hockley–Cann submitted an affidavit stating that she had been informed that on or about July 8, 1993, Defendant Michael Wellek directed the removal of certain documents from the Old Higgins Inn by his employees. Ms. Hockley–Cann's affidavit asserted that at least 200 individual files, including information such as the names and addresses of dancers, had been physically stored in three boxes on the premises of the Old Higgins Inn, and that at least 140 such files had been maintained in a file cabinet on those premises. No such materials had been produced in response to Plaintiff's repeated requests. Plaintiff asserted that all of these circumstances support entry of a default judgment against Defendants.[1]

---

1. As alternative sanctions, Plaintiff suggested (1) that this court strike Defendants' denials that they are part of an enterprise within the meaning of § 3(r) of the Fair Labor Standards Act; (2) that Defendants ABC and Wellek be precluded from presenting evidence from persons who worked at the Old Higgins Inn as dancers in support of their affirmative defense that these dancers are independent contractors rather than employees; and (3) that Defendants ABC and Wellek be directed to produce the withheld documents immediately and be restrained from re-

674

Defendants ABC/York Estes Corporation and Michael G. Wellek responded to Plaintiff's motion for sanctions initially on September 10, 1993. Defendants' response pointed out that Defendant ABC had provided a total of 17 boxes of material to Plaintiffs on several occasions. Although ABC acknowledged that there had been "problems with past productions," ABC asserted that it had made "extraordinary efforts to comply with Plaintiff's requests." (Defendants' Response to Plaintiff's Motion for Sanctions, 9/10/93, at 1.) With respect to the materials not yet produced, Defendants' Response asserted:

Many of the documents are not and have never been retained at the Club. These include records that were regularly, and had been since the inception of the Club, sent from the Club to the office on a daily, weekly or monthly basis. Most of these documents are not now nor have they ever been retained.

(*Id.* at 3.) These assertions were supported by the sworn declaration of Defendant Michael Wellek. In that declaration, Mr. Wellek explained that records from the Old Higgins Inn had been sent from the Inn to the office of ABC/York Estes Corporation at 9250 Golf Road in Des Plaines; that he did not remove or destroy any boxes or documents located on the premises of the Inn on July 8, 1993; and that during the middle of August 1993, he had "delivered the documents in their entirety to the law offices of Michael J. Rovell." (Declaration of Michael G. Wellek, 9/9/93, ¶¶ 4, 5, 7.) Defendants moved to strike Ms. Hockley–Cann's affidavit as nothing more than hearsay.

In reply to this response, the Secretary filed a memorandum in which he argued at length that the sanction of default is necessary and appropriate in this case. Plaintiff observed that each of Defendants' previous representations regarding the production of records had proven untrue. The Secretary noted unrebutted evidence that documents requested by the Secretary in fact existed but had not been produced. Plaintiff was particularly disturbed by Defendants' assertions that "independent contractor information sheets"—that is, work applications submitted by the dancers—had been created but no longer exist. "If one were to accept the explanation presently proffered by Defendants one would have to suspend all reason and believe that individuals seeking to work at the establishment are required to complete applications, ... one day only to have them throw them away the next, that photographs are taken solely for the purpose of throwing them away, and that individuals are asked for proof of age one day only to have them thrown away the next." (Plaintiff's Reply to Defendant's Response to Motion for Sanctions, 9/22/93, at 4.) In any event, Defendants' asserted practice of destroying documents even after the litigation began would constitute a blatant violation of discovery obligations to maintain and preserve records. (*Id.* at 5–8.) Plaintiff cited substantial case law for the proposition that Defendants' sustained and repeated failure to comply with successive discovery orders justifies an award of sanctions and that a "limited last-minute tender of allegedly responsive documents fails to cure the damage." (*Id.* at 9.) Plaintiff urged that default judgment is warranted and that a sanction of monetary damages only would be insufficient to punish defendants adequately and deter future violations.

Plaintiff's motion for sanctions was referred to this court by District Judge James F. Holderman on September 28, 1993. On October 25, 1993, there was an astonishing development. Attorney Michael Rovell reported in a letter of that date that on the previous day, he had prepared a videotape of the premises at the Old Higgins Inn and the Des Plaines office of ABC/York Estes, presumably in an effort to demonstrate that all materials sought by the Secretary had in fact been produced. Instead, during the course of the videotape session, Mr. Rovell found documents not previously produced, apparently secreted in a closet at the Des Plaines office. As a result of this discovery, Mr. Rovell's letter stated, "[D]efendant hereby withdraws its factual opposition to the motion for sanctions, and is producing in excess of 27 boxes of documents which consists [sic] primarily of envelopes containing the daily doc-

moving, destroying, or otherwise altering such documents.

umentation that is sent from the Club to the office, some of which has already been produced as it is copied and placed in notebooks. Also, some personal files were located today." (Letter of Rovell to Pallmeyer, 10/25/93.)

In response to this revelation, this court directed that Defendants submit evidence or argument to show cause why default is not the appropriate sanction for their tardy production of documents. Defendants' response to this request was a memorandum arguing, in effect, that Defendants' current "voluntary" production, as well their contrition and remorse, demonstrates that a lesser sanction than default is appropriate. Defendants suggested that the materials produced in response to the events of July 1993 were not the subject of prior formal discovery requests, and that Defendants' earlier production had been by itself sufficient to satisfy the Secretary's need to demonstrate the Secretary's jurisdiction over this case and Defendants' control of the establishment in question.

*Discussion*

Rule 37(b)(2)(c) of the Federal Rules of Civil Procedure authorizes the district court to dismiss an action or enter a judgment of default when a party fails to comply with court orders concerning discovery. Rule 37(d) provides specifically for an order of dismissal or default when the offending party fails to serve answers to interrogatories or to respond to a request for production of documents. The district court has broad discretion to sanction a party that fails to comply with a court order, *Patterson v. Coca–Cola Bottling Co.*, 852 F.2d 280, 283 (7th Cir.1988), and the Court of Appeals will review such an order only for abuse of discretion. *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir.1992), citing *Hindmon v. National–Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 620 (7th Cir. 1982).

The Seventh Circuit has directed that sanctions should be proportionate to the offending conduct, *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 303 (7th Cir. 1994); *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1381–82 (7th Cir.1993), and that the harsh sanction of default be reserved for extreme circumstances. *Ellingsworth v. Chrysler*, 665 F.2d 180, 185 (7th Cir.1981). While many cases have required a finding of willfulness or bad faith before default judgment may be entered as a sanction, others have not required such a finding. *See Select Creations, Inc. v. Paliafito America, Inc.*, 830 F.Supp. 1223, 1230 (E.D.Wis.1993) (collecting Seventh Circuit cases in which dismissal or default was ordered, with and without findings of bad faith). Most recently, in *Crown Life*, the Seventh Circuit explained that before entry of a default, there must be at least some finding of contumacious conduct, dilatory tactics, or the failure of less drastic sanctions. 995 F.2d at 1382; *cf. Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589, 591 (7th Cir.1992) ("The cases in this circuit ... do not set up a row of artificial hoops labeled 'bad faith' and 'egregious conduct' and 'no less severe alternative' through which a judge must jump in order to be permitted ... to dismiss a suit."). Notably, however, prior less drastic sanctions are not a prerequisite for entry of default. *Halas v. Consumer Services, Inc.*, 16 F.3d 161, 165 (7th Cir.1994); *Hal Commodity Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136, 1138–39 (7th Cir.1987) ("A district court is not required to fire a warning shot."). "[A] trial court is entitled to say, under proper circumstances, that enough is enough." *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1062 (7th Cir.1989).

Under any of the tests suggested—willfulness or bad faith; contumacious conduct; dilatory tactics; failure of lesser sanctions—this case presents circumstances where default is appropriate. Indeed, a judgment of default may be the only appropriate sanction here for several reasons.

First, it must be noted that there is nothing precipitous about Plaintiff's motion, nor about a sanction as harsh as default. Indeed, in this case the court did fire repeated "warning shots." Early in 1992, Judge Holderman reminded Defendant with no uncertainty that the original default judgment was lifted only in response to assurances that compliance with requests for information would be swift and complete, and warned

that default would be reinstated absent such compliance. On several occasions thereafter, the court specifically threatened to reinstate the default judgment without prompt compliance. The Secretary filed an initial motion for Rule 37 sanctions in July 1992—a motion deemed moot in response to Defendants' assurances that all materials had been produced, assurances which have proven false. In the fall of 1992, relying on Defendant ABC's and Wellek's misleading representations that missing documents must be in the hands of Loumar Corporation, the Secretary sought third-party discovery from Loumar. In April 1993, the Secretary named Loumar as an additional Defendant. When Loumar officials insisted that ABC and Wellek, not Loumar, had possession of relevant employment records, the Secretary took the depositions of three employees of the Old Higgins Inn. It was these deponents—not Defendant Wellek or any of his attorneys—who provided enough truthful information to alert the Secretary to the existence of relevant records that had never been produced. Indeed, the Secretary's attorneys learned from an informant that Michael Wellek had been heard giving directions to Inn employees regarding the movement of certain records that the Secretary had requested long before the initiation of this lawsuit, when the Department of Labor staff attempted to perform its investigation. The information supplied by the three deponents, and the informant, adequately supported the Secretary's second motion for sanctions. Contrary to Defendants' limp suggestion, that motion specifically requested an order of default. (Plaintiff's Motion for Sanctions Pursuant to Rule 37, 8/27/93, at 1.)

The Secretary's motion was well-grounded in fact and law as of the date it was filed. If it were not, however, the circumstances that followed presented conclusive support for entry of a default judgment. On October 24, 1993, Defendants' counsel learned, apparently for the first time, that their client had in fact moved relevant documents from the Old Higgins Inn to a hidden location in the ABC/York Estes corporate office. This discovery required counsel to withdraw its motion to strike the affidavit of Ms. Hockley–Cann containing information Ms. Hockley–Cann had obtained from an informant. Counsel also was required to, and did, withdraw Defendants' "factual opposition" to the Secretary's motion.

In an abundance of caution, this court provided Defendants with one final opportunity to demonstrate that a sanction short of default is appropriate in this case. As the Secretary urges, Defendants' effort to do so is wholly unsatisfying. First, Defendants have suggested that their tardy, but now complete, production mitigates against entry of default. Yet the Secretary asserts that Defendants' production in fact *remains incomplete.* On May 15, 1992, for example, the Secretary requested production of time cards for all categories of workers from August 1989 to the present. Defendants, however, have produced time cards for non-dancers only for periods in 1992 and 1993, and for dancers, only for a portion of 1993. With respect to the "independent contractor information sheets"—documents important to Defendants' purported affirmative defense that the dancers are not employees, and critical to the Secretary's effort to locate persons potentially entitled to relief—Defendants have produced only one such document for 1989, four for 1990, 55 for 1991, 133 for 1992 and 323 for 1993. (Plaintiff's Response to Defendants' Memorandum in Response to Order to Show Cause Why Default Should Not be Entered (hereinafter, "Plaintiff's Response"), at 3.) Yet Lynn Binder testified at her deposition that she believed some 3000 persons had worked at the Inn as dancers since 1991. (*Id.* at 4.) Even if Ms. Binder is wrong by a factor of three (*i.e.,* even if only 1000 dancers have worked there since 1991), Defendants' response is woefully incomplete. Contrary to Defendants' suggestion that some of the recently-"discovered" documents were not requested until a July 14, 1993 letter, the Secretary has demonstrated that the July 14, 1993 letter only represented a refinement of a request made well over a year earlier.

Most significantly, there is simply no basis for the suggestion that Defendants' recent production was "voluntary" or that Defendants themselves are contrite and remorseful. There is at least hearsay evidence sug-

gesting that Mr. Wellek perjured himself when he declared to this court that documents did not exist, only a few weeks after directing his own employees to move those documents from the Inn to the corporate office. And it is undisputed that it was Defendants' attorney, Mr. Rovell, who "discovered" the missing (and still incomplete) materials. Nothing indicates that Mr. Wellek would have ever produced these requested documents on his own.

Even if Defendants were able to establish that now, after having been caught in an apparent effort of deception, they have produced every requested piece of paper, this court could not conclude that the motion for default should be denied. In *Govas v. Chalmers*, 965 F.2d 298 (7th Cir.1992), the Seventh Circuit affirmed an order dismissing a securities fraud action based upon plaintiff's failure to comply with discovery, using language that accurately describes the conduct of Defendants ABC and Wellek in this case:

> [T]he plaintiffs demonstrated evasive and dilatory discovery tactics for several years before this dismissal. The record lists several incidents where the plaintiffs delayed in turning over records and in otherwise responding to interrogatories—including the nearly three-year delay in turning over the 9,000 documents which lead to the dismissal of this case.

965 F.2d at 301. Beyond these tactics, the *Govas* court noted that, as here, the offending parties had apparently withheld documents they did have in their possession and had failed to comply with the instructions to the discovery requests. *Id.* In addition to *Govas*, the Secretary has cited several other cases from this Circuit in which parties have been sanctioned by dismissal or default even after they made tardy production of long-requested documents. *See Crown Life Ins. Co. v. Craig*, 995 F.2d 1376 (7th Cir.1993); *United States v. Di Mucci*, 879 F.2d 1488 (7th Cir.1989); *Hogue v. Fruehauf Corp.*, 151 F.R.D. 635 (C.D.Ill.1993).

According to the Seventh Circuit, willful or bad faith violations of discovery orders, or "contumacious or dilatory tactics," or the failure of lesser sanctions, all justify an assumption that the sanction of default is appropri-

ate. *Crown Life*, 995 F.2d at 1383. Here, Plaintiff has demonstrated not only that Defendants are guilty of wrongdoing, but also that Defendants' conduct has resulted in prejudice to the Secretary of Labor. Plaintiff suffered delay in obtaining information necessary to establish that Defendants' gross sales are sufficient to render them subject to the provisions of the Fair Labor Standards Act. Defendants falsely suggested that the missing materials must be in the hands of another entity, Loumar Corporation, and the Secretary has devoted literally dozens of hours of attorney time demonstrating that basic records did in fact exist. From the time that the Department of Labor initiated its investigation of Defendants, critical information relating to the identity of the dancers has been unavailable to the Department's investigator. As the Secretary observes, the delay in providing this information is particularly significant where, as here, the workers are "engaged in a transient business" and may now be impossible to locate. (Plaintiff's Response, at 14.)

### Conclusion

Defendants ABC and Wellek repeatedly delayed discovery and denied the existence of relevant documents. Wellek himself may have willfully removed documents that he knew or should have known to be subject to production. Defendants have to date not produced all of the basic records necessary to investigate and discover the truth of the Secretary's claims. Under all of the circumstances of this case, any sanction short of default would send the wrong message to these Defendants and to other litigants. Willful and unjustified refusal to comply with discovery will not be tolerated by this court. Plaintiff's motion for default judgment should be granted.

### II. THE TABLE DANCE FEE: SERVICE CHARGE OR TIP?

As both parties to this case recognize, even if the Secretary prevails on his motion for default judgment, a hearing may be necessary to determine the amount of unpaid minimum wage liability. Although other kinds of

workers are involved, a central focus of this case is on the table dancers, persons who perform exotic dances for customers at the Old Higgins Inn and are compensated for these dances by the customers. Defendants contend that the monies the dancers receive from customers constitute a "service charge," for which Defendants are entitled to a credit or set-off against their minimum wage liability. Indeed, Defendants urge that the customers' payments to the dancers substantially exceed the minimum wage, and that if these payments are credited against Defendants' obligations, there will be no unpaid minimum wage liability at all.[2] The Secretary insists that the payments are in fact tips, for which Defendants are entitled to no credit against their obligations under the Fair Labor Standards Act.

Defendants believed that a resolution of the service charge/tip issue might assist the parties in reaching a settlement of this case, and both sides seemed to agree that the issue would need to be resolved before the case is concluded, regardless of whether a settlement is reached. Accordingly, this court requested briefs on this question and heard oral arguments. Although the issue is not strictly a subject of this referral, this Report will present the court's analysis and conclusion that the payments in question are tips, not service charges, and that Defendants are entitled to no credit against their minimum wage liability resulting from these payments.

### Factual Background

The Secretary has submitted, in effect, a motion for summary judgment on this issue, including a statement of facts and supporting exhibits. Although Defendants take issue with the Secretary's conclusions, they do not contest these facts, which are summarized below. At the time of the initial interview, a dancer seeking work at the Old Higgins Inn completes an "Independent Contractor Information Sheet" but no other documents. (Deposition of Deborah Vibert, Ex. B to Secretary's Memorandum of Points and Authorities (hereinafter, "Secretary's Memorandum"), at 143; Deposition of Deborah Binder, Ex. A to Secretary's Memorandum, at 183.) The Independent Contractor Information Sheet explains that "this is not an employment contract," that the dancer is an independent contractor, and that the dancer is "solely responsible for the payment of all taxes in connection with such services." (Independent Contractor Information Sheet, Ex. E to Secretary's Memorandum.) Deborah Vibert, who conducts the interviews, explains to each dancer that, pursuant to Old Higgins Inn policy, the dancer collects $5.00 per dance from the Inn customer. (Vibert Dep., at 143.) Vibert also explains that the dancer will be required to pay a $50.00 or $60.00 fee to the Inn for each shift that the dancer performs, referred to as the "house tip-out figure"; Vibert provides no other information regarding the terms of the dancer's compensation. (Id. at 148–9.) The dancers' income consists of tips they receive from customers when they perform on stage or socialize with customers, as well as the table dance fees they collect for each dance performed. (Secretary's Memorandum at 3; cf. Memorandum submitted by Defendants ABC/York–Estes and Wellek, 1/25/94 (hereinafter, "Defendants' Memorandum"), at 3 n. 1.)

---

2. As the Secretary points out, Defendants' contention that the table dance fee constitutes a "service charge" is inconsistent with the argument that the dancers are independent contractors rather than employees. If a default judgment is entered in favor of the Secretary, Defendants would not be heard to argue that the dancers are not employees. In any case, there is ample support for the Secretary's position on this issue. The Inn's "house rules," discussed *infra,* demonstrate that Defendants exercise substantial control over the dancers. Those rules require dancers to adhere to a work schedule and to pay fines for tardiness. Each dancer is charged a daily shift fee even if she fails to appear for a scheduled shift. The rules direct dancers to "stay out on the floor as much as possible," and to "keep mixing with the Customers unless you are on stage or table dancing." Dancers may be fined $5.00 if more than two of them are found in the dressing room at the same time during a shift. The Inn enforces a dress code and sets the time for the dancers' lunch breaks. (Dancer House Rules, Ex. F to Secretary's Memorandum of Points and Authorities.) Under very similar circumstances, the Fifth Circuit affirmed the conclusion that topless dancers in a night club whose compensation was derived solely from tips and "table dance" fees were employees covered by the Fair Labor Standards Act. *Reich v. Circle C Investments, Inc.,* 998 F.2d 324 (5th Cir.1993).

Each dancer pays the Inn a "tip-out" or shift fee for each shift on which she is scheduled to work. A dancer who fails to appear on a scheduled shift is nevertheless responsible to pay the full shift fee, and a dancer who fails to appear without calling to report her absence is required to pay double the shift fee. (House Rules at 4.)

As Defendants' managers, Ms. Vibert and Ms. Binder, explained, a table dance (also sometimes referred to as a "fantasy dance") is a dance performed in front of a customer in one of the 20 or 30 chairs placed along the back wall of the establishment for this purpose. (Binder Dep., at 179–82; Vibert Dep. at 227–29.) When hired, dancers receive a set of written house rules that govern their dance movements, costumes, and table dance procedures. (Dancer House Rules, Ex. F to Secretary's Memorandum.) The rules also describe fees and fines set by the Inn managers, and state, with respect to the table dance fees, the following:

1. Notify the Customer of the $5.00 per song Professional Artists' *Tipping Fee* prior to beginning dancing for him.

2. We advise you not to do more than 3 or 4 dances for a Customer without getting *tipped. We cannot force a Customer to tip you.* Also, do not request your *tip* in advance. If it is offered to you, fine, but don't ask for it in advance!

Among the Dancer House Rules, this caution appears:

31. It is a good idea not to waste your time talking to a Customer for more than one (1) minute without getting a table dance. Remember, you are losing at least $5.00 for every song that goes by without a table dance!

(*Id.*)

The dancers themselves were expected to notify the Inn customers of the table dance fees; in addition, the Inn's disk jockeys announced regularly that table dances cost $5.00 per song, and table tent cards—cards folded to stand up on each table—informed customers of the $5.00 "professional artist fee" for "fantasy dances." (Binder Dep. at 179–80; Vibert Dep. at 243.) Significantly, the Inn itself keeps no records regarding the number of dances each dancer performs, or the amount of table dance fees she receives. The table dance fees are not included in the Inn's gross receipts. (Binder Dep. at 265; Vibert Dep. at 314–15.) In Ms. Vibert's words, the money "goes directly to the dancers." (Vibert Dep. at 358.)

*Discussion*

Department of Labor regulations define "tip" as

a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity. In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer.

29 C.F.R. § 531.52. Where an employer has clearly explained the practice to its employees, tips may satisfy as much as 50% of the employer's minimum wage obligation. *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.50.

Labor regulations specifically distinguish a tip from a service charge:

(a) A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip received in applying the provisions of [29 U.S.C. § 203(m) and (t)]. Similarly, where negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received.

19 C.F.R. § 531.55(a). From the employer's standpoint, the distinction between a tip and a service charge is significant. Although a tip may be credited against 50% of the employer's minimum wage liability, a service charge may be used in full to reduce the

minimum wage amounts owed. The relevant regulation states:

(b) As stated above, *service charges* and other similar sums *which become part of the employer's gross receipts* are not tips for the purposes of the Act. However, where such sums are distributed by the employer to his employees, they may be used in their entirety to satisfy the monetary requirements of the Act.

29 C.F.R. § 531.55(b) (emphasis supplied).

Defendants in this case assert that the table dance charge collected by the dancers "is plainly *not* a tip" (Defendants' Memorandum, at 2), because, according to Defendants, neither the dancer nor the customer "has any discretion with regard to whether the fee is charge and paid, or its amount." (Id. at 3.) In fact, however, as reflected above, Defendants' own house rules refer to the table dance charge as a "tipping fee" and suggest that a significant amount of discretion is exercised by the dancers and by their customers. The rules advise dancers not to perform more than a few dances "without getting tipped" and warn them, "We cannot force a Customer to tip you." Most significantly, it is undisputed here that the table dance fees simply do not "become part of the employer's gross receipts." This single factor readily distinguishes the table dance fees from the charges involved in each of the cases upon which Defendants rely. In *Mechmet v. Four Seasons Hotels, Ltd.*, 639 F.Supp. 330 (N.D.Ill.1986), *aff'd*, 825 F.2d 1173 (7th Cir.1987), for example, Judge Leinenweber of this court cited the relevant regulations in concluding that a 16% service charge added by the Four Seasons to its banquet catering charge and distributed among waiters was not a tip, despite the fact that an applicable collective bargaining agreement referred to the charge as a "gratuity." Id. at 338. The *Mechmet* case falls squarely within the example of a service charge presented in 29 C.F.R. 531.55(a),

quoted above. There is no question that the 16% charge involved there was paid directly to the hotel as part of the hotel's banquet fee.

In *Marshall v. Newport. Motel,* 24 Wage and Hour Cas. 497 (S.D.Fla.1979), the respondent, a resort motel operator, listed gratuities on their payroll records and distributed the amounts in separate checks to housemaids. There is no indication that the amounts in question were not included in the motel's gross receipts, and such a conclusion would be contrary to logic. Similarly, in *Bonham v. Copper Cellar Corp.*, 476 F.Supp. 98, 100 (E.D.Tenn.1979), the court allowed the employer a credit against his minimum wage obligations for "service charges *returned* to [plaintiff waitresses]" (emphasis supplied).

In this case, the table service charges were not "returned" to the dancers; they were paid directly to the dancers and never recovered by the Inn at all. As Department of Labor regulations teach, a service charge may not be credited against unpaid minimum wage obligations unless it "becomes part of the employer's gross receipts." *See Melton v. Round Table Restaurants, Inc.,* 67 Labor Cas. ¶ 32,630 at p. 45,193 (N.D.Ga.1971) (refusing to allow full credit toward minimum wage of tips charged on credit cards, regardless of the fact that the tips passed through the employer's hands: "It is only when there is a fixed service charge prescribed by the employer *and which becomes a part of it's [sic] gross receipts that such charges may be converted into wages ...*" (emphasis supplied)). As the *Melton* court noted, the employer bears the burden of proving that it is entitled to the service charge credit. As in *Melton,* Defendants' failure to maintain records may render it impossible for Defendants to carry that burden.[3]

Although Defendants assert that they "have the absolute right" at any time to require the dancers to give their table dance fees to the Inn (Defendants' Memorandum at

---

**3.** Similarly, this court's conclusion that the table dance fees are tips will not authorize Defendants to rely on those fees to satisfy 50% of Defendants' minimum wage liability. Such a 50% credit is available only where the employer has informed the employees of the tip credit provisions. 29 U.S.C. § 203(m). Courts have enforced this requirement strictly. *See Richard v. Marriott Corp.,* 549 F.2d 303, 305 (4th Cir.1977); *Bonham v. Copper Cellar Corp.,* 476 F.Supp. 98, 101 (E.D.Tenn.1979); *Cuevas v. Bill Tsagalis, Inc.,* 149 Ill.App.3d 977, 987, 102 Ill.Dec. 946, 953–54, 500 N.E.2d 1047, 1054–55 (2nd Dist.1986).

5), they do not dispute that they have not exercised such a right to date. Instead, they suggest that the whole issue amounts to nothing more than a bookkeeping matter because "as far as the dancers are concerned, the net effect of all this will be nil." (*Id.*) That argument relies, however, on Defendants' as-yet unproven claim that every single dancer has recovered amounts in excess of the minimum wage for every shift of work. In light of the absence of records to support that claim, Defendants may never be able to demonstrate that their practices have had no effect on the wages earned by the dancers.

### Conclusion

This court should conclude that the table dance charges are tips, not service charges, and that Defendants may not apply these charges against their minimum wage obligations.

### III. *PETITION TO INTERVENE*

On November 24, 1993, two of the dancers, Rita Erwin and Tammy Senter, on behalf of a proposed class of dancers currently performing at the Old Higgins Inn ("Petitioners"), filed a petition requesting leave to intervene as of right as party defendants in this action pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. Pursuant to the requirements of Rule 24(c), Petitioners also filed a proposed pleading in response to the Secretary's amended complaint, setting forth the defenses for which they seek intervention. In this proposed answer, Petitioners contend that they, and each of the members of their proposed class, have been compensated in excess of the minimum wage throughout their tenure at the Old Higgins Inn. (Petitioners' Proposed Answer ¶ 3.) In addition, Petitioners deny that they are employees and affirmatively state that they are instead independent contractors. (*Id.* ¶ 5.) The Secretary filed a memorandum opposing Petitioners' intervention ("Secretary's Opposition"), and Petitioners filed a reply to the Secretary's Opposition ("Petitioners' Reply"). For the reasons stated below, this court concludes that the petition should be denied.

### Discussion

Federal Rule of Civil Procedure 24(a)(2) [4] establishes four conjunctive criteria for intervention as of right: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Shea v. Angulo,* 19 F.3d 343 (7th Cir.1994); *Southmark Corp. v. Cagan,* 950 F.2d 416, 418 (7th Cir. 1991). Failure to satisfy even one of these requirements is sufficient to warrant a denial of a motion to intervene under Rule 24(a)(2). *United States v. City of Chicago,* 908 F.2d 197, 199 (7th Cir.1990), *cert. denied,* 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991) (citing *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs.,* 736 F.2d 384, 386 (7th Cir.1984)).

Courts and commentators have noted, however, that although an applicant for intervention must satisfy all four requirements of Rule 24(a)(2), these requirements should not be considered independently but must be balanced against each other. 3B Moore, James W. & Kennedy, John E., Moore's Federal Practice ¶ 24.07, at 24–44 (2d ed. 1991); David L. Shapiro, *Some Thoughts on Intervention Before Courts, Agencies and Arbitrators,* 81 Harv.L.Rev. 721, 740 (1968). In *United States v. Hooker Chems. & Plastics Corp.,* 749 F.2d 968, 983 (2d Cir.1984), for example, Justice Friendly wrote:

> The various components of the Rule are not bright lines, but ranges—not all "interests" are of equal rank, not all impairments are of the same degree, representation by existing parties may be more or less adequate, and there is no litmus paper test for timeliness. Application of the

4. Federal Rule of Civil Procedure 24(a)(2) provides:

> Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of

the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule requires that its components be read not discretely, but together. A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation. Similarly, where representation is clearly inadequate, a lesser interest may suffice as a basis for granting intervention.... The requirements for intervention embodied in Rule 24(a)(2) must be read also in the context of the particular statutory scheme that is the basis for the litigation and with an eye to the posture of the litigation at the time the motion is decided. Finally, although the Rule does not say so in terms, common sense demands that consideration also be given to matters that shape a particular action or particular type of action.

(citations omitted).

Similarly, because applications for intervention arise in a wide variety of situations involving unique facts and procedural postures, the determination of whether to grant or deny intervention is highly fact-specific. The Seventh Circuit recently noted that:

"Intervention is a procedural device that attempts to accommodate two competing policies: efficiently administrating [sic] legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand.... In resolving the tension that exists between these dual concerns, the particular facts of each case are important, and prior decisions are not always reliable guides."

*Shea,* 19 F.3d at 349 (quoting *United States v. Pitney Bowes, Inc.* 25 F.3d 66, 69 (2d Cir.1994)).

Moreover, in evaluating a motion to intervene, the court must accept as true the nonconclusory allegations of the motion and proposed answer. *Lake Investors Dev. Group v. Egidi Dev. Group,* 715 F.2d 1256, 1258 (7th Cir.1983) (citations omitted). A motion to intervene as a matter of right should not be denied unless it appears certain that the applicants are not entitled to relief under any set of facts that could be proved under their pleadings. *Id.* Petitioners' brief primarily relies on *Usery v. Brandel,* 87 F.R.D. 670, 673 (W.D.Mich.1980), in which the Secretary of Labor challenged the propriety of a "sharecropper" arrangement between the defendant and certain migrant agricultural workers. Nine of the workers who identified themselves as "independent contractors" moved to intervene as defendants and counter-claimants under Rule 24(a)(2), seeking a judgment declaring that their association with the defendant was exempt from the provisions of the Act. *Id.* at 673–74. The district court concluded that the petitioners had a significant protectable interest in "rights which may be affected by interpretation of [the] pending case" because their employment relation was implicated, 87 F.R.D. at 676, and that the workers satisfied all the requirements of Rule 24(a)(2). Accordingly, the district court granted the workers' motion to intervene.

The Secretary, on the other hand, primarily relies on *Brock v. Lauritzen,* 649 F.Supp. 16 (E.D.Wis.1986), *aff'd,* 835 F.2d 1529 (7th Cir.1987), *cert. denied,* 488 U.S. 898, 109 S.Ct. 243, 102 L.Ed.2d 232 (1988). In that case, several individuals who worked on the defendants' farms moved to intervene as party defendants in an action brought under the Act. *Id.* at 17. The court denied the motion, concluding that it was untimely and that the interest of the proposed intervenors—to protect their status as independent contractors—was identical to the interest "so vigorously propounded by the defendants." *Id.*

## A. Interest in Subject Matter of the Pending Litigation

The Supreme Court has described the requisite "interest" for purposes of Rule 24(a), as one that is "significantly protectable." *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). Similarly, the Seventh Circuit articulates the test as whether the potential intervenor has "a direct, significant legally protectable interest." *American Nat'l Bank & Trust Co. v. City of Chicago,* 865 F.2d 144, 146 (7th Cir. 1989); *United States v. 36.96 Acres of Land,* 754 F.2d 855, 858 (7th Cir.1985), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986).

Petitioners claim that the Old Higgins Inn currently employs them as independent contractors and that they have a legally protectable interest in preserving this status. (Amended Petition to Intervene ¶ 7.) The Secretary argues that this is "in fact just an economic interest in the litigation" and is not direct and substantial for purposes of Rule 24(a). (Secretary's Opposition, at 10–11.) The Secretary characterizes Petitioners' claim as an attempt to contract away the protections of the Act and argues that, because the Supreme Court has held such attempts impermissible, they cannot constitute protectable interests. (*Id.* at 9–10 (citing *Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985)).)

Petitioners insist that at issue here is whether they can properly be characterized as "employees" in the first place, and therefore, whether the Act applies to them at all. (Petitioners' Reply at 7.) They assert that they "get greater recompense and satisfaction from their independent contractor status" and that their interest in preserving their current status satisfies the requirements of Rule 24(a). (Petitioners' Reply, at 6–7 (citing *Brandel*, 87 F.R.D. at 676).)

This court agrees with Petitioners that a central issue in this case is whether the dancers themselves are "employees," entitled to the protection of the Act. Nonetheless, Petitioners have failed to demonstrate that their interest is cognizable for purposes of Rule 24(a). Petitioners here fail to identify how they "get greater recompense and satisfaction from their independent contractor status." In other words, Petitioners fail to explain *why* they desire to be characterized as independent contractors or *how* they could be harmed by being characterized instead as employees. Petitioners fail to identify, for example, any freedoms, rights, or financial benefits, they would lose if the court concludes they are employees. To the contrary, if the Secretary prevails, Petitioners stand to recover unpaid back wages and overtime compensation along with applicable interest.

This court therefore concludes that Petitioners have failed to satisfy the Seventh Circuit's rigorous requirement that their interest be direct and substantial.

### B. *Practical Impairment of Interest*

Because Petitioners have failed to assert a direct, legally protectable interest, it follows that they have failed to assert that they are "so situated that the disposition of the [pending] action may as a practical matter impair or impede ... [their] ability to protect that interest." Petitioners contend that a ruling that the dancers are employees rather than independent contractors will practically impair their interest. (Amended Petition to Intervene ¶ 8.) They claim that if such a ruling were entered, "it is extremely likely that the Old Higgins Inn will cease operations," and consequently "the [proposed] Intervenors will become unemployed" and will be forced to accept alternate employment under terms and conditions "that are far less favorable" than those they currently enjoy. (*Id.*; Petitioners' Reply at 6–7 (citing *Brandel*, 87 F.R.D. at 676).)

The Secretary argues that this claim does not satisfy the impairment prong. He points out that Petitioners have failed to provide any factual basis for their prediction. In any event, as the Seventh Circuit has recognized, a "gloomy prediction that application of the Act will have a devastating economic impact" does not excuse compliance with the Act's provisions. (Secretary's Opposition, at 11–12 (quoting *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1538 (7th Cir.1987), *cert. denied*, 488 U.S. 898, 109 S.Ct. 243, 102 L.Ed.2d 232 (1988)).) The Secretary asserts, moreover, that if Petitioners' motion is denied, they will still be able to negotiate with Defendants for "whatever working conditions and method of payment they desire," as long as such conditions meet the standards of the Act. (*Id.* at 12.) He contends that injunctive relief runs solely against the named Defendants, and therefore that the *stare decisis* effect of rulings in this action "does not prevent the ... dancers from seeking to negotiate virtually any terms they desire." (*Id.* at 13.) Recognizing that the court in *Brandel* reached a contrary conclusion on similar facts, the Sec-

retary suggests that "that Court failed to ·appreciate the realities of the employment relationship or the requirements of the Act." (*Id.* at 12.)

This court agrees with the Secretary that Petitioners' "gloomy prediction" that enforcement of the Act will jeopardize the Inn's existence should not relieve Defendants or Petitioners from complying with the Act's provisions and does not constitute practical impairment. It is true that " '[i]mpairment exists when the decision of a legal question ... would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding.' " *Shea,* 19 F.3d at 347 (citations omitted); *see also New York Pub. Interest Research Group, Inc. v. Regents of the State Univ. of New York,* 516 F.2d 350, 352 (2d Cir.1975) (permitting pharmacists to intervene in consumer action seeking to enjoin enforcement of statewide prohibition of advertising prices of prescription drugs, where the prohibition "might well lead to significant changes in the profession and in the way pharmacists conduct their businesses"). As the Secretary points out, however, a judgment for the Secretary need not prevent the dancers from seeking to negotiate virtually any terms they desire in the future, as long as such terms meet the standards of the Act.

Petitioners have failed to show that disposition of this action may as a practical matter impair or impede their ability to protect their interests.

### C. *Inadequacy of Representation*

Weighing most heavily in favor of the dancers' petition to intervene is the issue of adequacy of representation under Rule 24(a)(2). Rule 24(a)(2) requires that Petitioners demonstrate that their interest is not "adequately represented by existing parties." The Supreme Court has noted that an appli-

cant's burden of demonstrating inadequate representation is "minimal." *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972); *see also Lake Investors,* 715 F.2d at 1261. There can be little doubt that Petitioners could meet that burden here. Defendants' conduct in defending this lawsuit has resulted in this court's recommendation that a default judgment be entered. As Petitioners observe, Defendants are not adequately representing their purported interest in preserving their status as "independent contractors" because "some or all of the remaining defendants may be willing to concede that the Intervenors are not independent contractors, if that concession would facilitate settlement." (Amended Petition to Intervene ¶ 9.) The representative party's nonfeasance has been deemed to demonstrate inadequate representation. *See F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union,* 629 F.2d 1204 (7th Cir.1980) (allowing workers to intervene to appeal setting aside of arbitration award since union's failure to appeal and withdrawal from case would impair their ability to protect their interests), *cert. denied,* 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981). The default judgment recommended here would effectively result in a conclusion on this issue without any effective advocacy supporting the claim that the dancers are not employees.

The Secretary, of course, argues that Petitioners' interests are being adequately represented by the existing parties. (Secretary's Opposition, at 13.) He contends, further, that the Act requires only the named Defendants to maintain records and that only they will be subject to contempt for failure to do so if injunctive relief is granted. (*Id.*) He claims, therefore, that Defendants have "more impetus to maintain this action than do the dancers." (*Id.*[5]) Finally, the Secre-

---

5. Citing *Heyman v. Exchange Nat'l Bank of Chicago,* 615 F.2d 1190 (7th Cir.1980), the Secretary argues, moreover, that Petitioners' claim that the Secretary's interest is adverse to their own is inadequate. (Secretary's Opposition at 13–14.) He claims that Petitioners must also show "(1) collusion between the representative and the opposing party, and (2) failure of the representative to fulfill his duty." (*Id.* at 14.) The Secretary

further insists that Petitioners' argument that their interests differ from those of Defendants is inadequate because "[o]ne party need not advance the identical argument of another to adequately represent its interests." (*Id.,* quoting *City of Chicago,* 796 F.2d at 211.) The Secretary's reliance on *Heyman* is misplaced, however. At issue in that case was a debtor's attempt to intervene in a plenary action filed by the trustee

tary contends that the fact that some or all of the remaining defendants may be willing to concede that the dancers are not independent contractors in order to facilitate settlement merely provides another basis for denying Petitioners leave to intervene. (*Id.*) Citing *Bethune Plaza, Inc. v. Lumpkin,* 863 F.2d 525, 531 (7th Cir.1988), and *United States v. City of Chicago,* 908 F.2d 197, 199 (7th Cir. 1990), he urges the court to deny Petitioners' application and bring this case to its conclusion.

Regardless of the merits of the Secretary's arguments on this issue, the fact remains that Petitioners have not demonstrated what, if anything, they stand to lose if they are characterized as employees rather than independent contractors. Such a conclusion cannot change what has happened in the past and cannot result in any liability on the part of the dancers themselves. The dancers remain free to negotiate any terms they choose for their future relationship with Defendants, so long as those terms do not violate the Act. Petitioners cannot be heard to argue that intervention is necessary to pursue a relationship that does not comply with the law. In spite of the inadequacy of Defendants' litigation performance, the dancers have not shown that their own legitimate interests are inadequately represented here. Petitioners have therefore failed to satisfy the representation prong of Rule 24(a)(2).

### D. *Timeliness*

The purpose of the timeliness requirement is to "prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *United States v. City of Chicago,* 796 F.2d 205, 209, (7th Cir.1986), quoting *United States v. South Bend Community Sch. Corp.,* 710 F.2d 394, 396 (7th Cir.1983), *cert. denied,* 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 181 (1984). As noted earlier, there is "no litmus paper test for timeliness." *United States v. Hooker Chems. & Plastics Corp.,* 749 F.2d 968, 983 (2nd Cir.1984). Whether a petition for intervention is timely does not depend solely upon the amount of time that may have elapsed since the institution of the action, but on all the circumstances of the particular case. *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). The determination of whether a motion to intervene is timely is committed to the sound discretion of the district court and is decided by reference to the "totality of the circumstances." *Shea,* 19 F.3d 343, 348 (citations omitted). The court should consider four factors in making such a determination: " '(1) the length of time the intervenor knew or should have known of his interest in this case, (2) the prejudice to the original parties caused by the delay, (3) the resulting prejudice to the intervenor if the motion is denied, and (4) any unusual circumstances.' " *Id.* at 349, quoting *South v. Rowe,* 759 F.2d 610, 612 (7th Cir.1985).

Petitioners claim that their petition is timely because the case is still in the discovery stage and no trial date has been set. (Amended Petition to Intervene ¶ 6.) They assert, moreover, that they "will not inject any issues into this case that have not already been raised or which should not have already been foreseen" and that none of the existing parties will be prejudiced by their participation in the case. (*Id.*)

The Secretary argues that the motion is untimely because "the applicants knew or should have known of their interest in this litigation as early as the filing of the original complaint." (Secretary's Opposition, at 4–5 (citing cases).) He asserts that although Petitioners have provided no information as to when or how they learned of the suit, the Secretary's own office contacted both named Petitioners in April 1992, regarding the pay practices at the Old Higgins Inn. (*Id.* at 5.) Thus, the Secretary argues, the named Petitioners "have been aware of the pending action for at least a year and a half." (*Id.*) Despite this knowledge, the Secretary contends, Petitioners failed to apply for leave to intervene until "moments before a hearing on

---

in bankruptcy. In deciding that representation was adequate, the court analogized the situation to that in a Minnesota case in which residuary beneficiaries sought to intervene in an executors' action seeking a tax refund. *Id.* The Secretary

in this case does not "represent" the dancers in the same sense that an executor represents beneficiaries or a bankruptcy trustee represents the estate.

an Order to Show Cause Why Default Should Not Be Entered was to take place." (*Id.* at 6.)

The Secretary also takes issue with Petitioners' contention that none of the existing parties will be prejudiced by their participation in this case. (Secretary's Opposition, at 7.) He argues that the case is approaching the close of discovery and if Petitioners were granted leave to intervene, "discovery would begin anew," which would cause him to incur significant delays. (*Id.* at 7–8). On this basis, he distinguishes *Brandel*, 87 F.R.D. at 675, in which the court granted workers leave to intervene because the suit had "not advanced beyond early discovery and was yet far from trial." Relying instead on *Lauritzen*, 649 F.Supp. 16, the Secretary insists that Petitioners' motion is untimely.

This court agrees with the Secretary that Petitioners knew or should have known of their interest in this litigation as early as the filing of the original complaint. Courts have not always measured the lapse of time from the time the action was instituted, however, or even from the time that the applicant was aware of the action, but rather from the time that the applicant was aware that its interests may be adversely affected by the litigation. *United States v. City of Chicago*, 870 F.2d 1256 (7th Cir.1989) (although a consent decree had been previously entered in a discrimination suit, a motion to intervene was timely because it was made 64 days after the court approved an alteration in the decree that impaired interests of petitioners).[6] In this case, Petitioners may have had no reason to anticipate that their interests may be adversely affected until Defendants were in jeopardy of having a default judgment entered against them.

On the other hand, the court is persuaded that the Secretary will be significantly prejudiced by Petitioners' intervention. This case is still in the discovery stage only because of Defendants' discovery abuses. For many months, the Secretary has vigorously pressed for discovery responses that would have enabled him to move for summary judgment. Defendants' egregious failure to respond resulted in the Secretary's motion for default or other sanctions. The court's gavel was in the air on that motion when, at the eleventh hour and fifty-ninth minute, Defendants' counsel came upon several boxes of relevant documents that Defendants had not only failed to produce but had claimed under oath did not exist. The Secretary's staff have devoted many hours to reviewing those documents and have taken lengthy depositions of three managers of the Old Higgins Inn. The court therefore agrees with the Secretary that if Petitioners were granted leave to intervene, the Secretary might suffer significant prejudice.

Conversely, as stated earlier, Petitioners have failed to demonstrate how they may be prejudiced if instead of being tested on its merits, this case is terminated either by entry of a default judgment against Defendants or a settlement reached through concession by Defendants. This court therefore concludes that under the "totality of the circumstances," Petitioners fail to satisfy the timeliness requirement.

### Conclusion

Because they fail to satisfy the four criteria for intervention as of right, Petitioners' motion to intervene should be denied.[7]

---

**6.** *See also Howard v. McLucas*, 782 F.2d 956 (11th Cir.1986) (although petitioners had long been aware of discrimination suit against their employer, intervention to oppose a proposed settlement was timely because petitioners could not have anticipated that the settlement would affect their interests), *cert. denied*, 493 U.S. 1002, 110 S.Ct. 560, 107 L.Ed.2d 555 (1989); *South v. Rowe*, 759 F.2d 610 (7th Cir.1985) (although motion to intervene to enforce a consent decree between former prison inmate and state was made only one day before decree was scheduled to expire, motion was timely because petitioner had only recently learned that his interests would be adversely affected).

**7.** Even if the motion were granted, the Secretary correctly notes that Petitioners' implied request for an order certifying a class of dancers would be inappropriate. (Secretary's Opposition, at 1.) Even if Petitioners had satisfied the requirements for intervention, they would still be required to demonstrate that they merit class certification under Rule 23 before they could be permitted to intervene as a class. Petitioners are not likely to satisfy the Rule 23 requirements of commonality and typicality because it is unlikely that all members of the proposed class agree with Petitioners that the Secretary seeks relief that is "directly contrary" to their interests; in fact, according to the Secretary, the original investigation was

*RECOMMENDED DISPOSITION*

For the foregoing reasons, this court respectfully recommends:

(a) that the Secretary's motion for default judgment against Defendants ABC/York Estes Corp. and Michael G. Wellek be granted, and that the court set the matter for hearing before the District Judge or before this court pursuant to 28 U.S.C. § 636(b)(2), for assessment of the amount of unpaid wage liability;

(b) that at any such hearing, the table dance fees be deemed tips, for which Defendants are entitled to no credit against their FLSA obligations; and

(c) that the petition of Rita Erwin and Tammy Senter to intervene as Defendants in this case be denied.

ENTER:

(signed)

REBECCA R. PALLMEYER
United States Magistrate Judge

Date: September 2, 1994

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable James F. Holderman. *See* Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).

*DISTRICT COURT'S DISCUSSION*

The appropriate time has been accorded for the filing of any objections to Magistrate Judge Pallmeyer's September 2, 1994 Report and Recommendation. This court will now address each point raised using the heading titles of the Report and Recommendation.

"I. *Plaintiff's Motion for Sanctions*"

■ Defendants offered no objection "to the recommendation that default judgment be entered against them as a sanction." (Defendants' Response to Recommendations of Magistrate Judge Pallmeyer, ¶ 1.) The recommendation of default judgment is appropriate and supported amply by the facts and prompted by an anonymous tip from some of the

the law. *See Stookey v. Teller Training Distributors, Inc.*, 9 F.3d 631 (7th Cir.1993); *Newman v. Metropolitan Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir.1992) ("A plaintiff's failure to comply with discovery orders is properly sanctioned by dismissal of the suit, a defendant's by entry of a default judgment."). Consequently, the court adopts the Report and Recommendation of Magistrate Judge Pallmeyer regarding Plaintiff's Motion for Sanctions.

■ Plaintiff's Motion for Sanctions is granted against defendants ABC/York–Estes Corporation doing business as Heavenly Bodies and Michael G. Wellek, individually and doing business as Heavenly Bodies, for the reasons stated in the Report and Recommendation. The Answer filed May 3, 1993 by these defendants is stricken. The allegations of plaintiff's Amended Complaint are deemed admitted by these defendants. A default judgment on liability and findings as to all facts relating thereto are entered on the merits in favor of the plaintiff and against these defendants as prayed for in the Amended Complaint, which states:

> "[P]laintiff prays for judgment, pursuant to section 17 of the Act, permanently enjoining and restraining defendants, their officers, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of any such judgment, from violating the provisions of sections 6, 7, 11, 15(a)(2) and 15(a)(5) of the Act, and for such other and further relief as may be necessary or appropriate, including the restraint of any withholding of payment of unpaid minimum wage and overtime compensation, with interest as applicable, found by the court to be due under the Act to defendants' employees. Said interest is, where applicable, to run from the date such back wages become due until the date back wages are paid."

(Amended Complaint Ad damnum, pp. 5–6.)

The determination of appropriate liquidated damages as plaintiff's Amended Complaint further prays:

dancers.

"In addition, cause having been shown, plaintiff prays for judgment, pursuant to section 16(c) of the Act awarding liquidated damages for the employees listed on the attached Appendix and currently unknown employees, said amounts being equal to the unpaid minimum wage and overtime compensation due to defendants' employees,"

(Amended Complaint Ad damnum, p. 6) must await further proceedings in this case for appropriate determination.

## "II. *The Table Dance Fee: Service Charge or Tip?*"

Magistrate Judge Pallmeyer addressed this issue as an accommodation to counsel and this court acknowledging that "the issue is not strictly a subject of this referral" (Report and Recommendation at 21). Defendants have objected to that part of the Report and Recommendation (Defendants' Response to Recommendations of Magistrate Judge Pallmeyer, p. 2) arguing:

"It was inappropriate for the Magistrate to make an recommendation to *this* court on a matter that was discussed solely in terms of settlement.[1]" *Id.*

In footnote 1 of their Response, defendants in effect seek the disqualification of Magistrate Judge Pallmeyer stating:

"Should there be an occasion to refer any further matter to a magistrate, defendants request that the reference be to a magistrate other than Magistrate Judge Pallmeyer." *Id.* at footnote 1.

There is no factual or legal basis for defendants' request for the recusal or disqualification of Magistrate Judge Pallmeyer in this case. *See Matter of Huntington Commons Associates,* 21 F.3d 157 (7th Cir.1994).

■ On January 12, 1994 Magistrate Judge Pallmeyer attempted to assist the parties by conducting a settlement conference. No settlement of the case was reached at that conference because the "service charge" issue remained unresolved. To assist the parties further on that point, Magistrate Judge Pallmeyer with the concurrence of counsel, set a briefing schedule on the issue. Indeed, the January 12, 1994 minute order entered by Magistrate Judge Pallmeyer stated:

"Settlement conference held. No agreement was reached, but parties agree that the 'service charge' issue must be resolved. Accordingly, Respondent will submit its brief on that issue on or before January 24, 1994; Petitioner's response will be submitted on February 7, 1994; reply is due February 17, 1994."

(Minute Order of 1/12/94.)

This court appreciates Magistrate Judge Pallmeyer's discussion of the issue. The court believes the discussion was appropriate. The parties should as well because they now have the benefit of one judicial officer's views on that issue for their consideration in evaluating the case in terms of settlement. A final judicial determination of the issue must be deferred at this time by this court for consideration in conjunction with further proceedings in this case.

## "III. *Petition to Intervene*"

On November 24, 1993, two persons, Rita Erwin and Tammy Senter, who are alleged to be dancers performing at the Old Higgins Inn, filed, on behalf of themselves and a proposed class of dancers currently performing at The Old Higgins Inn, a petition requesting leave to intervene as of right as defendants in this action pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. Magistrate Judge Pallmeyer recommended that this court deny the petitioners' motion to intervene. The petitioners have objected to the Magistrate Judge's recommendation, arguing that they have satisfied all the requirements of Rule 24(a)(2) and therefore should be granted leave to intervene as of right as defendants in this action.

■ In order to have a right to intervene a party must "(1) make timely application, (2) have an interest relating to the subject matter of the action, (3) be at risk that interest will be impaired, 'as a practical matter,' by the action's disposition and (4) lack adequate representation of the interest by the existing parties." *Nissei Sangyo America, Ltd. v. United States,* 31 F.3d 435, 438 (7th Cir.1994) (citing *Southmark Corp. v.*

*Cagan,* 950 F.2d 416, 418 (7th Cir.1991)). "The applicant has the burden of proving each of the four elements of intervention as of right; the lack of one element requires that the motion to intervene be denied." *Keith v. Daley,* 764 F.2d 1265, 1268 (7th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985) (citations omitted). In ruling on a motion to intervene, the court must accept the allegations of the motion as true. *Lake Investors Development Group, Inc. v. Egidi Development Group,* 715 F.2d 1256, 1258 (7th Cir.1983). The court should not deny a motion to intervene as a matter of right "unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *Id.* (citations omitted).

## A. *Interest Requirement*

 The court's inquiry as to the motion to intervene begins with the issue of whether the proposed intervenors in this case have a interest in the subject matter of the pending litigation because this consideration is relevant to much of the Rule 24(a)(2) analysis. The term "interest" for purposes of Rule 24(a)(2) has been described by the Supreme Court as an interest which is "significantly protectable." *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). The Seventh Circuit has interpreted *Donaldson* to mean that a proposed intervenor must demonstrate " 'a direct, significant legally protectable interest' " in the subject matter at issue in the pending litigation. *American Nat'l Bank & Trust Co. v. City of Chicago,* 865 F.2d 144, 146 (7th Cir.1989) (quoting *Wade v. Goldschmidt,* 673 F.2d 182, 185 (7th Cir.1982)).

 In this case, the court finds that the proposed intervenors do not have a legally protectable interest in the subject matter of this litigation. None of the actions taken by the Secretary, nor the statutory authority called into question in this case, involves the proposed intervenors who seek to intervene as defendants. *See Wade,* 673 F.2d at 185. In a suit such as this, brought to require compliance with a federal labor statute, the parties charged with compliance can be the only defendants. *See Wade,* 673 F.2d at 185; *See also Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 301–02, 105 S.Ct. 1953, 1961, 85 L.Ed.2d 278 (1985). The Secretary brought this action to enforce the requirements of the Fair Labor Standards Act. The Secretary of Labor has no authority pursuant to the Act over the actions of the proposed intervenors as "employees" of the named defendants. Therefore the "employees" are not proper parties to this compliance action.

In *Tony & Susan Alamo Foundation,* like in this case, the Secretary of Labor brought an action against an employer to require compliance with the Fair Labor Standards Act arguing that the Foundation's associates were "employees" within the meaning of the Act. Although the associates did not attempt to intervene in the action as the petitioners have in this case, the associates who testified at the trial in *Tony & Susan Alamo Foundation* vigorously protested coverage under the Act, asserting that they considered themselves volunteers, not "employees" of the Foundation within the meaning of the Act.

 The Supreme Court rejected this testimony, however, finding that "these protestations, however sincere, cannot be dispositive." *Tony & Susan Alamo Foundation,* 471 U.S. at 301, 105 S.Ct. at 1961. Regarding the rights of the associates under the Federal Labor Standards Act the Supreme Court stated:

That the associates themselves vehemently protest coverage under the Act makes this case unusual, but the purposes of the Act require that it be applied even to those who would decline its protections. If an exception to the Act were carved out for employees willing to testify that they performed work "voluntarily," employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act. Such exceptions to coverage would affect many more than those workers directly at issue in this case and would be likely to exert a general down-

ward pressure on wages in competing business.

*Tony & Susan Alamo Foundation,* 471 U.S. at 302, 105 S.Ct. at 1962. Thus this court holds that the proposed intervenors have no interests that relate to the subject matter of this action and have therefore failed to assert an interest in the lawsuit sufficient to warrant intervention as of right.[8]

### B. *Timeliness*

Finally, even if the court were to conclude that the proposed intervenors have a direct, legally cognizable interest in the litigation, the motion to intervene was not timely. "Whether a motion to intervene was made in a timely fashion is determined by reference to the totality of the circumstances." *Shea v. Angulo,* 19 F.3d 343, 348 (7th Cir.1994). There are four relevant factors that a court should consider when making a timeliness determination:

(1) The length of time the intervenor know or should have known of his interest in this case, (2) the prejudice to the original parties caused by the delay, (3) the resulting prejudice to the intervenor if the motion is denied, and (4) any unusual circumstances.

*Id.* at 349 (citing *South v. Rowe,* 759 F.2d 610, 612 (7th Cir.1985)). Determining whether an application to intervene is timely, even for motions to intervene as of right, is left to the discretion of the district court. *Shea,* 19 F.3d at 349.

▆▆▆▆ This court agrees with the Magistrate Judge that the petitioners knew or should have known of their potential interest in this case as early as April of 1992, the date on which the Secretary individually contacted each named petitioner by letter regarding the pay practices at The Old Higgins Inn.[9]

Yet it was not until November 30, 1993, after the records were found to exist, which has now prompted the unopposed sanction of default judgment being entered against the Defendants, and the day before a hearing was held regarding the plaintiff's request for default judgment against the Defendants, that petitioners filed their motion. Therefore, the court finds that the petitioners have failed to meet the timeliness requirement of Rule 24(a)(2). Because petitioners Rita Erwin and Tammy Senter have failed to satisfy the four requirements of Rule 24(a)(2), their motion to intervene as of right is denied as Magistrate Judge Pallmeyer recommended.[10]

### DISTRICT COURT'S CONCLUSION

Plaintiff's Motion for Sanctions Pursuant to Rule 37 (No. 84) is GRANTED. Default judgment is entered as a sanction against Defendants ABC/York–Estes Corporation and Michael G. Wellek, Individually, and in favor of plaintiff. The Motion to Intervene filed by Rita Erwin and Tammy Senter (No. 111) is DENIED. All other pending motions are moot. The parties are encouraged to discuss a settlement of this case. The case is set for a report on status on September 28, 1994 at 10:00 a.m.

---

8. Because the court has found that the proposed intervenors do not have an interest in the subject matter of the litigation, the court need not address the issues of adequacy of representation and impairment of interest.

9. The Secretary contacted both individually named applicants by letter regarding the pay practices at The Old Higgins Inn. *See Secretary's Opposition to Motion to Intervene,* Exhibit A. This letter asked for information regarding the pay practices at the establishment and notified these dancers that the Inn was under investigation by the Department of Labor to determine if it was in compliance with the Fair Labor Standards Act.

10. Moreover, based upon the same reasons, permissive intervention under Rule 24(b) would also be inappropriate.